07-3858-cv
State of New York v. U.S. Dep't of Health and Human Servs.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: December 12, 2008)                    Decided: February 13, 2009)

Docket No. 07-3858-cv

_____

STATE OF NEW YORK, by and through THE NEW YORK STATE
OFFICE OF CHILDREN AND FAMILY SERVICES,

*Plaintiff-Appellant,*

— v.—

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES'
ADMINISTRATION FOR CHILDREN AND FAMILIES and
CHARLES E. JOHNSON, ACTING SECRETARY OF THE DEPARTMENT OF
HEALTH AND HUMAN SERVICES,[1]

*Defendants-Appellees.*

_____

B e f o r e:

RAGGI, LIVINGSTON, *Circuit Judges*, and CASTEL, *District Judge*.[2]

_____

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Charles E. Johnson is substituted for Mike Leavitt as defendant-appellee.

[2] The Honorable P. Kevin Castel, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a district court judgment dismissing New York State's Administrative Procedure Act challenge to defendants' determination that the state's failure in certain cases to comply with the "judicial determination of reasonable efforts" requirement set forth in 45 C.F.R. § 1356.21(b)(2) rendered the state ineligible for federal reimbursement of foster care maintenance payments in those cases. New York's contention that § 1356.21(b)(2) conflicts with the statute it implements, 42 U.S.C. § 672(a)(1), is incorrect. Section 1356.21(b)(2) requires a judicial determination of state compliance with the reasonable child placement efforts set forth in 42 U.S.C. § 671(a)(15) as amended by the 1997 Adoption and Safe Families Act, Pub. L. No. 105-89, § 101(a), 111 Stat. 2115, 2116-17, and the plain language of § 672(a)(1) signals Congress's intent to incorporate all "reasonable efforts" discussed in § 671(a)(15) into § 672(a)(1). Accordingly, New York's complaint was properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

AFFIRMED.

---

VICTOR PALADINO, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Andrew Bing, Deputy Solicitor General, *on the brief*), *for* Andrew M. Cuomo, Attorney General of the State of New York, *for Plaintiff-Appellant*.

KELSI BROWN CORKRAN, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. (Mark B. Stern, Attorney, Appellate Staff, Civil Division, and Jeffrey S. Bucholtz, Acting Assistant Attorney General, *on the brief*), *for Defendants-Appellees*.

---

2

REENA RAGGI, *Circuit Judge*:

Plaintiff State of New York sued defendants United States Department of Health and Human Services ("HHS") Administration for Children and Families ("ACF") and HHS Acting Secretary Charles E. Johnson in the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) for failing to reimburse the state for certain foster care maintenance payments as provided by federal law. See 42 U.S.C. §§ 670-679b (Part E, "Federal Payments for Foster Care and Adoption Assistance"). Invoking the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, New York asserts that defendants cannot rely on the state's undisputed failure to satisfy the "judicial determination" condition outlined in 45 C.F.R. § 1356.21(b)(2) to justify the challenged reimbursement refusal because that regulation is in conflict with the statute it implements, 42 U.S.C. § 672(a)(1).[3] Having failed to persuade the district court of this argument, New York now

---

[3] Section 672 was amended by the Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7404, 120 Stat. 4, 151-52. The relevant portion of former § 672(a)(1) was re-codified as 42 U.S.C. § 672(a)(2)(A)(ii). The parties agree that the 2005 change has no substantive effect on the issue presently before us. Accordingly, all references to § 672(a)(1) are to the statute as it existed at the time this dispute arose. At that time, it read as follows:

Each state with a plan approved under this part shall make foster care maintenance payments . . . if –

(1) the removal from the home occurred pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and (effective October 1, 1983) that reasonable efforts of the type described in section 671(a)(15) of

3

appeals a judgment entered on July 17, 2007, which dismissed its complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

We conclude that the state's case was properly dismissed because it rests on a misconstruction of § 672(a)(1). That statute conditions federal reimbursement for foster care maintenance payments on a demonstration that a child's removal to foster care "was the result of a judicial determination to the effect . . . that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made." 42 U.S.C. § 672(a)(1). The quoted language plainly signals Congress's intent to incorporate the full range of "reasonable efforts" required by § 671(a)(15). Thus, when Congress expanded § 671(a)(15) through a provision of the 1997 Adoption and Safe Families Act, Pub. L. No. 105-89, § 101(a), 111 Stat. 2115, 2116-17, that expanded definition of "reasonable efforts" was incorporated in § 672(a)(1)'s "judicial determination" requirement. Because we construe § 672(a)(1) to incorporate § 671(a)(15) as amended, and because 45 C.F.R. § 1356.21 is based on that amended statute's definition of "reasonable efforts," New York cannot demonstrate that the regulation is inconsistent with the law and, thus, cannot state a claim under the APA for which relief can be granted. Accordingly, we affirm the judgment of dismissal.

---

this title for a child have been made.

42 U.S.C. § 672(a) (2003).

4

## I. Background

### A. Statutory Background

Preliminary to discussing the particular facts giving rise to this case, we review the statutory scheme at issue.

In 1980, as part of the Adoption Assistance and Child Welfare Act, Pub. L. No. 96-272, § 101, 94 Stat. 500, 501-13 (1980), Congress amended the Social Security Act by creating Title IV-E, which provides for "reimbursement to the states" of part of the "foster care maintenance and adoption assistance payments made by the states on behalf of eligible children" when the states satisfy the requirements of the Act.[4]  Vermont Dep't of Soc. & Rehab. Servs. v. U.S. Dep't of Health & Human Servs., 798 F.2d 57, 59 (2d Cir. 1986) (discussing amendment); see Suter v. Artist M., 503 U.S. 347, 351 (1992) (same).  To participate in the federal reimbursement program, a state must create a plan for payment that

---

[4] The term "foster case maintenance payments" is defined by statute to mean

> payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement.  In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the items described in the preceding sentence.

42 U.S.C. § 675(4)(A). States are eligible for reimbursement of their foster care maintenance payments up to "an amount equal to the Federal medical assistance percentage" for children in foster family homes or child-care institutions.  Id. § 674(a)(1).

meets the requirements of 42 U.S.C. § 671(a), and that plan must be approved by the Secretary of HHS pursuant to § 671(b). The § 671(a) requirement relevant to this appeal demands that a state plan "provide[] for foster care maintenance payments in accordance with section 672 of this title." 42 U.S.C. § 671(a)(1). Under § 672(a)(1), foster care maintenance payments are to be made only if a child's parents or legal guardian entered into a voluntary agreement for foster placement, or "the removal . . . was the result of a judicial determination to the effect [1] that continuation [in the home from which the child was removed] would be contrary to the welfare of such child and [2] (effective October 1, 1983) that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made." Id. § 672(a)(1) (2003). It is § 672(a)(1)'s requirement that a state obtain a "judicial determination" that it has made "reasonable efforts of the type described in section 671(a)(15)" that is at issue in this case.

Prior to 1997, the "reasonable efforts" requirement of § 671(a)(15) was reflected in the following language:

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which . . .
>
> (15) effective October 1, 1983, provides that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home.

42 U.S.C. § 671(a) (1983). Thus, prior to 1997, if a child's removal to foster care was not

voluntary, a state was required to obtain a judicial determination that (1) continuation of the child in the home from which he was removed was contrary to his welfare, and (2) the state had made reasonable efforts (a) to prevent or eliminate the need to remove the child from his home, and (b) to make it possible for the child to return to his home. New York does not dispute that, prior to 1997, it was obliged to satisfy these requirements to qualify for federal reimbursement of its foster care maintenance payments.

In 1997, with the enactment of the Adoption and Safe Families Act, Congress expanded the description of "reasonable efforts" in § 671(a)(15), placing the original language in subpart (B), while providing for the whole to read as follows:

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which . . .
>
> (15)    provides that –
>
> > (A)    in determining reasonable efforts to be made with respect to a child, as described in this paragraph, and in making such reasonable efforts, the child's health and safety shall be the paramount concern;
> >
> > (B)    except as provided in subparagraph (D), reasonable efforts shall be made to preserve and reunify families –
> >
> > > (i)    prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and
> > >
> > > (ii)    to make it possible for a child to safely return to the child's home;

7

(C)	if continuation of reasonable efforts of the type described in subparagraph (B) is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child;

(D)	reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that --

   (i)	the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);

   (ii)	the parent has –

      (I)	committed murder . . . of another child of the parent;

      (II)	committed voluntary manslaughter . . . of another child of the parent;

      (III)	aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter; or

      (IV)	committed a felony assault that results in serious bodily injury to the child or another child of the parent; or

   (iii)	the parental rights of the parent to a sibling have been terminated involuntarily;

(E)	if reasonable efforts of the type described in subparagraph (B) are not made with respect to a child as a result of a determination made by a court of competent jurisdiction in

accordance with subparagraph (D) –

    (i)     a permanency hearing (as described in section 675(5)(C) of this title) shall be held for the child within 30 days after the termination; and

    (ii)    reasonable efforts shall be made to place the child in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child; and

    (F)    reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with reasonable efforts of the type described in subparagraph (B).

Id. § 671(a).

Legislative history indicates that these amendments were prompted by the "growing belief that Federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents." H.R. Rep. 105-77, at 8 (1997), reprinted in 1997 U.S.C.C.A.N. 2739, 2740. Congress decided that "[r]ather than abandoning the Federal policy of helping troubled families, what is needed is a measured response to allow States to adjust their statutes and practices so that in some circumstances States will be able to move more efficiently toward terminating parental rights and placing children for adoption." Id. Thus, the amended statute requires "reasonable efforts" not only to avoid the removal of a child to foster care, but to provide a child in foster care with a permanent placement, with the caveat that the health and safety of the child is always the paramount concern guiding these efforts.

To implement § 672(a)(1) in light of the amendment to cross-referenced § 671(a)(15), HHS promulgated 45 C.F.R. § 1356.21, which took effect in 2000. See 63 Fed. Reg. 50,058, 50,072-79 (1998) (proposed rule); 65 Fed. Reg. 4,020, 4,088-90 (2000) (final rule). The part of the regulation challenged on this appeal reads as follows:

(b)     Reasonable efforts. . . .

    (2)     Judicial determination of reasonable efforts to finalize a permanency plan.

        (i)     The State agency must obtain a judicial determination that it has made reasonable efforts to finalize the permanency plan that is in effect (whether the plan is reunification, adoption, legal guardianship, placement with a fit and willing relative, or placement in another planned permanent living arrangement) within twelve months of the date the child is considered to have entered foster care in accordance with the definition at § 1355.20 of this part, and at least once every twelve months thereafter while the child is in foster care.

        (ii)     If such a judicial determination regarding reasonable efforts to finalize a permanency plan is not made in accordance with the schedule prescribed in paragraph (b)(2)(i) of this section, the child becomes ineligible . . . until such a determination is made.

45 C.F.R. § 1356.21(b)(2).

B.     Factual Background

In reviewing a judgment of dismissal pursuant to Rule 12(b)(6), we necessarily accept as true the facts alleged by New York in its complaint. See, e.g., Vietnam Ass'n for Victims

10

of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008).

In April 2003, ACF – the agency within HHS that administers the Title IV-E reimbursement program – conducted a preliminary review of the payments and expenses for the period April 1, 2002 to September 30, 2002 for which New York sought reimbursement. See 45 C.F.R. § 1356.71 ("This section sets forth requirements governing Federal reviews of State compliance with the title IV-E eligibility provisions as they apply to children and foster care providers."). In the course of that review, ACF determined that in 31 of 80 randomly selected cases the state was ineligible for federal reimbursement. Ten of those 31 cases are relevant to this appeal because ACF determined ineligibility in these cases based solely on New York's failure to receive a judicial determination certifying that the state had made reasonable efforts to finalize permanency plans as prescribed by 45 C.F.R. § 1356.21(b)(2). Consequently, ACF disallowed $66,016.67 in reimbursements.

New York challenged ACF's disallowance decision before the HHS Departmental Appeals Board, arguing that 45 C.F.R. § 1356.21 in fact conflicts with the controlling statute, 42 U.S.C. § 672(a)(1), insofar as the regulation incorrectly assumes that § 672(a)(1) incorporates the entirety of amended § 671(a)(15).[5] New York submits that because the cross-reference in § 672(a)(1) was enacted when § 671(a)(15) included only the language

_____

[5] Together with three other states, New York also challenged ACF's decision to disallow certain other administrative costs. Both the Appeals Board and the district court rejected this challenge, but because the state does not pursue it on this appeal, we have no reason to discuss it further.

11

now set forth in § 671(a)(15)(B), HHS cannot reasonably construe the "judicial determination" requirement of § 672(a)(1) to reach beyond that language, nor can it promulgate regulations to that effect. The Appeals Board rejected New York's argument and affirmed the challenged disallowance decision.

New York then commenced this lawsuit under the APA, 5 U.S.C. §§ 701-706, presenting the district court with the same statutory construction challenge. Applying the analytic framework set forth in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984), the district court rejected plaintiff's argument at Chevron's second step and granted dismissal in favor of defendants. This timely appeal followed.

## II.    Discussion

### A.    Standard of Review

We review the challenged judgment of dismissal de novo, accepting as true the facts alleged in plaintiff's complaint and drawing all inferences in New York's favor. See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d at 115; see also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

### B.    New York's Challenge to HHS's Reliance on 45 C.F.R. § 1356.21(b)(2) to Deny the State Reimbursement Benefits in this Case Fails to State a Claim

#### 1.    The Nature of New York's Challenge

New York asserts that the district court erred in dismissing its APA challenge to ACF's denial of reimbursement benefits in this case. Under the APA, a court may "hold

12

unlawful and set aside agency action, findings and conclusions found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. New York submits that the denial of benefits in this case satisfies this standard because it was based solely on the state's failure to comply in ten cases with 45 C.F.R. § 1356.21, a regulation that is invalid because it creates a requirement for reimbursement eligibility beyond that intended by Congress when it incorporated the "reasonable efforts" requirements of 42 U.S.C. § 671(a)(15) into § 672(a)(1). Whether the complaint states a colorable claim thus turns on an issue of statutory construction, specifically, whether § 672(a)(1) incorporates by reference the entirety of § 671(a)(15) as amended by the 1997 Adoption and Safe Families Act – in which case the challenged regulation would plainly be in accordance with law and New York's complaint properly dismissed – or whether § 672(a)(1) incorporates only that part of § 671(a)(15) in effect at the time of initial incorporation, i.e., the "reasonable efforts" now discussed in § 671(a)(15)(B) – in which case New York's complaint should not have been dismissed.

### 2. The *Chevron* Framework for Analyzing New York's Claim

To resolve the statutory construction issue at the heart of New York's challenge, we turn to the two-part framework established by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. at 842-43. At step one, we consider "whether Congress has directly spoken to the precise question at issue." Id. "If the intent

13

of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id.; see Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 116 (2d Cir. 2007). "To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary." Cohen v. JP Morgan Chase & Co., 498 F.3d at 116. Only if we determine that Congress has not directly addressed the "precise question at issue" will we turn to canons of construction and, if that is unsuccessful, to legislative history "to see if those 'interpretative clues' permit us to identify Congress's clear intent." Id. (quoting General Dynamics Land Sys. Inc. v. Cline, 540 U.S. 581, 586 (2004)).

If, despite these efforts, "we still cannot conclude that Congress has 'directly addressed the precise question at issue,' we will proceed to Chevron step two, which instructs us to defer to an agency's interpretation of the statute" it administers, "so long as it is 'reasonable.'" Id. (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843-44). We do not discuss step two further because, in this case conclude at step one of our Chevron analysis that New York fails to state a claim for relief.

3. Congress Unambiguously Incorporated § 671(a)(15), as Amended, into § 672(a)(1)

New York submits that both the plain language of the statutory text and the canon of construction set forth in Hassett v. Welch, 303 U.S. 314 (1938), demonstrate that Congress did not intend to incorporate into § 672(a)(1) its 1997 amendments to § 671(a)(15). We

14

construe the plain language of the statute to reveal the contrary, i.e., that Congress unambiguously intended to incorporate § 671(a)(15), including the 1997 amendments, into § 672(a)(1). While this conclusion makes it unnecessary for us to resort to canons of construction, we note in any event that the Hassett canon does not warrant a contrary result in this case.

### a. The Statutory Text

New York's textual argument can be summarized as follows: although Congress expanded the concept of "reasonable efforts" discussed in § 671(a)(15) in 1997, it did not amend the phrase "reasonable efforts of the type described in section 671(a)(15)" as used in § 672(a)(1) in a way that explicitly signals Congress's intent to incorporate the 1997 amendments to § 671(a)(15). Specifically, New York argues, Congress did not pluralize the word "type" in § 672(a)(1) to correspond to the expanded definition of "reasonable efforts" in § 671(a)(15). Thus, New York argues, continued use of the singular word "type" necessarily means that Congress must have intended the § 672(a)(1) cross-reference to apply only to the "reasonable efforts" identified in the pre-1997 version of § 671(a)(15), in short, to the current § 671(a)(15)(B). Insofar as the challenged regulation, 45 C.F.R. § 1356.21(b)(2)(i), implements the "judicial determination" requirement of § 672(a)(1) by reference to the post-1997 description of "reasonable efforts" in § 671(a)(15), New York insists the regulation is not in accordance with the law and cannot support the denial of

15

reimbursement in this case.

The text does not support this argument. The language of § 672(a)(1) is unambiguous in its incorporation by reference of § 671(a)(15) in its entirety. See supra at **[3 n.3]** (quoting § 672(a)(1)). Further, contrary to New York's assertion, the use of the singular "type" in § 672(a)(1) is neither grammatically incorrect nor indicative of Congress's intent to limit the scope of the cross-reference to a discrete part of § 671(a)(15). The word "type" modifies the term "reasonable efforts," which is employed in § 671(a)(15) to reference a single, undivided concept or duty. This is clear from the text of § 671(a)(15)(A), which instructs that "in determining reasonable efforts to be made with respect to a child, as described in this paragraph, and in making such reasonable efforts, the child's health and safety shall be the paramount concern." 42 U.S.C. § 671(a)(15)(A) (emphasis added). The emphasized language signals Congress's intent to have the "reasonable efforts" requirement of § 671(a)(15) viewed as a single duty encompassing all of the lettered subparagraphs that follow (a)(15)(A).[6] Thus, § 671(a)(15) is not properly construed to impose on a state discrete

---

[6] This conclusion finds further support in the text of the 1997 Adoption and Safe Families Act, in which Congress entitled the relevant section "Clarification of the Reasonable Efforts Requirement." Pub. L. No. 105-89, § 101(a), 111 Stat. at 2116. Congress's use of the singular "requirement" in the section heading reinforces our conclusion that Congress viewed § 671(a)(15)'s reasonable efforts requirement as a single concept or duty. See Porter v. Nussle, 534 U.S. 516, 527-28 (2002) ("'The title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.'" (alteration omitted) (quoting Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998)).

16

reasonable efforts requirements, each of which might be viewed as a distinct "type."

Even if the lettered subparagraphs of § 671(a)(15) were viewed as separate requirements, it would be grammatically correct to refer to them collectively as "reasonable efforts" of a single "type." The Oxford English Dictionary defines "type" to include a "kind, class, or order as distinguished by a particular character." 18 Oxford English Dictionary 786 (2d ed. 1989). This definition makes clear that the singular word "type" may appropriately be used to refer to the entire class or order of "reasonable efforts" described in § 671(a)(15). To suggest otherwise, New York is obliged to refer to the amendment history of § 671(a)(15). Such history is relevant, however, only when we cannot discern Congress's intent from the statutory text. It is not properly invoked to insinuate ambiguity into an otherwise clear text. See City of N.Y. v. Beretta U.S.A. Corp., 524 F.3d 384, 404-05 (2d Cir. 2008) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." (internal quotation marks omitted)). In any event, for reasons discussed in the ensuing section, the amendment history does not lend support to New York's claim.

b. The *Hassett* Canon of Construction

As a rule, where statutory text is clear, we have no reason to apply canons of construction to discern Congress's intent. See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005) ("Only if we discern ambiguity do we resort first to canons of

17

statutory construction."). In any event, the canon of construction cited by New York, which relates to statutory amendments and is set forth in Hassett v. Welch, 303 U.S. at 314, is not applicable to this case.

That canon instructs:

Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute so taken unless it does so by express intent.

Id. (internal quotation marks and alteration omitted). In Hassett, however, the Court notably referred to this canon as a "rule respecting two separate acts" where "one section of a statute refers to another section which alone is amended." Id. (emphasis added).

The Hassett canon of construction offers no support for New York's position. First, the Hassett canon is not a "categorical rule that compels courts to always read statutory cross-references as pointing to their original targets." United States v. Head, 552 F.3d 640, 645 (7th Cir. 2009). Rather, like all canons of construction, it is a tool to be used only where "the meaning of the section is not so free from doubt as to preclude inquiry concerning the legislative purpose." Hassett v. Welch, 303 U.S. at 309; see United States v. Head, 552 F.3d at 646 ("'Writing a cross-reference rather than repeating the text to be incorporated is useful precisely because the target may be amended. A pointer permits the effect of a change in one section to propagate to other, related, sections without rewriting all of those related

18

sections.'" (alteration omitted) (quoting Herrmann v. Cencom Cable Assocs., Inc., 978 F.2d 978, 983 (7th Cir. 1992))). Because we discern no ambiguity in § 672(a)(1)'s reference to the "reasonable efforts" requirement in § 671(a)(15), we need not inquire into the legislative purpose, and there is no need to turn to canons of construction. See Hassett v. Welch, 303 U.S. at 313-14 ("Resort is had to canons of constructions as an aid in ascertaining the intent of the Legislature" when there is "sufficient ambiguity to warrant [the court] seeking such aid.").

Moreover, as New York concedes, § 671(a)(15) was not "alone . . . amended" by the 1997 Adoption and Safe Families Act. See Hassett v. Welch, 303 U.S. at 314. That Act amended both § 671(a)(15) and § 672(a)(1), the latter by adding the phrase "for the child" before "have been made." Pub. L. No. 105-89, § 101(c), 111 Stat. at 2117. While the edit may appear small, it is sufficient to render the Hassett canon inapplicable because it demonstrates that § 672(a)(1) did not escape Congress's notice at the time it amended § 671(a)(15). Indeed, it would be unreasonable to assume that Congress was unaware that the plain language of § 672(a)(1) cross-referenced § 671(a)(15) in its entirety as the relevant language is just three words before the addition made by section 101(c) of the 1997 Act. From this perspective, the 1997 amendment to § 672(a)(1) is notable not because of Congress's purported failure to expand the scope of the statute's cross-reference to § 671(a)(15) by pluralizing the word "type," but because of Congress's failure to limit the

19

scope of the cross-reference by amending "§ 671(a)(15)" to read "§ 671(a)(15)(B)."

In sum, we conclude that § 672(a)(1)'s plain language reflects Congress's intent to incorporate § 671(a)(15) as amended in 1997 in its entirety into the statutory requirement that a state obtain a "judicial determination" of "reasonable efforts" as a condition for reimbursement.

4. 45 C.F.R. § 1356.21 Is Consistent with § 672(a)(1)

Because we construe § 672(a)(1) to incorporate § 671(a)(15) as amended by the 1997 Act, we readily conclude that the challenged implementing regulation, 45 C.F.R. § 1356.21(b)(2), is in accordance with law and that HHS's reliance on that regulation to deny New York certain reimbursements was not arbitrary or capricious. See 5 U.S.C. § 706. Indeed, New York has offered no alternative argument to support its APA challenge in the event that we were to disagree with its reading of the cross-reference in § 672(a)(1), as we do.

The statutory cross-reference in § 672(a)(1) makes clear that, in order to demonstrate eligibility for foster care maintenance payments, a state must, inter alia, obtain a judicial determination that it has met the reasonable efforts requirement set forth in § 671(a)(15)(C), i.e., that it has made reasonable efforts to "place the child in a timely manner in accordance with the permanency plan . . . , and to complete whatever steps are necessary to finalize the permanent placement of the child." 42 U.S.C. § 671(a)(15)(C). This is no more and no less

20

than the challenged regulation requires: "The State agency must obtain a judicial determination that it has made reasonable efforts to finalize the permanency plan that is in effect (whether the plan is reunification, adoption, legal guardianship, placement with a fit and willing relative, or placement in another planned permanent living arrangement) within twelve months of the date the child is considered to have entered foster care." 45 C.F.R. § 1356.21(b)(2)(i). Thus, because we conclude as a matter of law that 45 C.F.R. § 1356.21(b)(2)(i) is not in conflict with § 672(a)(1), we uphold the dismissal of New York's APA challenge for failure to state a claim.

III. **Conclusion**

To summarize, insofar as defendants have denied New York reimbursement for foster care maintenance payments made in ten cases in which the state failed to comply with the judicial determination requirement stated in 45 C.F.R. § 1356.21(b)(2)(i), New York fails to state a claim for relief under the APA because:

(1) 42 U.S.C. § 672(a)(1) is properly construed to incorporate by reference the "reasonable efforts" requirement of § 671(a)(15) as amended in its entirety; and

(2) 45 C.F.R. § 1356.21(b)(2)(i) is consistent with this statutory scheme.

The district court judgment of dismissal is hereby AFFIRMED.