[889 NYS2d 437]

# In the Matter of JAMIE C. and Another, Children Alleged to be Neglected. MARGARITA C., Respondent.

Family Court, Kings County, November 13, 2009

**APPEARANCES OF COUNSEL**

*Administration for Children's Services*, Brooklyn (*Kyle Sosebee* of counsel), for petitioner. *Brooklyn Family Defense Project*, Brooklyn (*Megan Brown* of counsel), for respondent. *Legal Aid Society*, Brooklyn (*Justin Contratto* of counsel), for Nancy C. *Rebecca Fort*, Brooklyn, for Jamie C.

**OPINION OF THE COURT**

BRYANNE A. HAMILL, J.

## Background

This child protective proceeding began on June 18, 2009 when the Administration for Children's Services (hereinafter ACS) exercised its emergency removal powers pursuant to Family Court Act § 1024 and removed the subject children, Jamie (age three) and Nancy (age 11), from the respondent mother, Margarita C. On June 19, 2009 ACS filed a neglect petition pursuant to article 10 of the Family Court Act against the mother, alleging that the mother neglected her children and requesting that the children be remanded to the care and custody of the Commissioner of ACS.

The petition specifies that according to the staff of Lutheran Hospital the mother suffers from a mental illness which impairs her ability to supervise the children: namely, bipolar disorder with psychotic features, for which she frequently fails to take her prescribed medication. The source at Lutheran Hospital informed ACS that the mother was involuntarily hospitalized on February 1, 2008 to February 20, 2008, May 1, 2009 to May 8, 2009 and again on June 9, 2009 to June 16, 2009.

The petitioner makes a further allegation regarding three-year-old Jamie who is diagnosed with Down syndrome. In or about April 2009, in her home, the mother locked Jamie's visiting therapist in a room for a length of time. As a result, no assigned visiting therapist is willing to provide services to Jamie.

Based on the above allegations, ACS asserts that the children's temporary removal from home is necessary to avoid imminent risk to their lives or health. ACS also alleges that it earlier provided reasonable efforts to prevent or eliminate the need for

the removal, in that the caseworker on visits to the home consistently counseled the mother to take her medications and that on May 14, 2009 at a family counseling session he repeated his admonition. The mother was released from the hospital on June 16, 2009, and the children were removed from her home on June 18, 2009 because the mother was not taking her medication. The petitioner further alleges that the respondent's 18-year-old son had been parentified to care for the subject children and the mother.

On June 19, 2009, the presiding intake judge referred this matter to Part 1 of the Kings County Family Court for a Family Court Act § 1027 hearing on ACS's application for a court-ordered removal of the subject children. Family Court Act § 1027 requires that when a child has been removed without a court order a hearing must be held no later than the next business day to determine whether a removal is necessary to avoid imminent risk to the child's life or health.

On June 22, 2009, the next court day, the mother appeared and waived her right to participate in the section 1027 hearing. This court, after hearing the caseworker testify as to the imminent risk of the children if they remained with the mother, granted the petitioner's application and remanded both children to the care and custody of ACS.[*] However, this court denied ACS's application for a reasonable efforts finding, claiming that counsel for ACS, testimony from the assigned caseworker and the sworn petition and addendums thereto failed to show evidence of ACS's reasonable efforts to prevent or eliminate the need for the children's removal.

On August 18, 2009 ACS filed a motion pursuant to Family Court Act § 1061 for modification of the June 22, 2009 order. On August 19, 2009, the motion for modification was dismissed by this court as procedurally incorrect. The court granted ACS leave to re-file a motion that requested the appropriate relief, which was to request leave to renew its June 22, 2009 application to the court for a reasonable efforts finding.

On August 27, 2009, ACS filed this instant motion pursuant to CPLR 2221, asking for leave to renew its June 19, 2009 ap-

---

[*] The mother requested a Family Court Act § 1028 hearing, which was scheduled for June 29, 2009, to determine whether return of the children to the mother would place the children at imminent risk. On June 29, 2009 all parties consented to Nancy's return to the mother's custody under certain terms and conditions, and the mother's application for return of Jamie was withdrawn.

plication and find that (a) ACS made reasonable efforts to prevent or eliminate the need for removal of the subject children or, (b) in the alternative, that ACS's failure to make such efforts was appropriate under the circumstances. In support of its motion, ACS has annexed an affirmation of ACS counsel, Kyle Sosebee, dated August 20, 2009 (hereinafter aff of counsel) and copies of ACS investigation progress notes from April 22, 2009 through June 18, 2009.

ACS advances four arguments in support of its application for a renewal: (1) ACS made reasonable efforts to prevent the removal of the subject children; (2) any lack of reasonable efforts was appropriate under the circumstances; (3) ACS was not given sufficient opportunity to present evidence of reasonable efforts to remove the subject children; and (4) ACS made reasonable efforts to return Nancy to her mother's care. The motion was adjourned to September 16, 2009 to allow the mother and the attorney for the children to submit a response and for oral argument. Neither the mother nor the attorneys for the children took a position on ACS's motion.

On September 16, 2009, the ACS lawyer appeared before the court without the assigned caseworker, turned down the opportunity offered by this court for an evidentiary hearing and rested ACS's argument on its moving papers. The court denied ACS's motion, finding that ACS had failed to submit additional facts and evidence to support a finding that ACS made reasonable efforts to prevent the need for the children's removal. This written decision incorporates this court's analysis of its June 22, 2009 and September 16, 2009 decisions.

### Analysis

The relevant portion of CPLR 2221 (e) states, in part:

"A motion for leave to renew . . .

"2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and

"3. shall contain reasonable justification for the failure to present such facts on the prior motion."

ACS, in its motion, provided neither new facts nor reasonable justification for its failure to present such facts on the prior motion. Indeed, though ACS claims that a reasonable efforts finding by this court is incomplete without testimony from the

caseworker for the mother and children, the record does not show that ACS requested an opportunity to have the caseworker testify prior to filing its renewal motion.

In *Greene v New York City Hous. Auth.* (283 AD2d 458 [2d Dept 2001]), the Appellate Division, Second Department, reversed the trial court's decision, which granted the plaintiff's motion to renew its motion, to vacate its default. The Court found that plaintiffs failed to provide any justification as to why they failed to present the new facts upon which their motion to renew was based to the court, on their prior motion. (*Id.* at 459.) Similarly in *Delvecchio v Bayside Chrysler Plymouth Jeep Eagle* (271 AD2d 636, 638 [2d Dept 2000]), the Court found that the trial court correctly denied the defendant's motion to renew, claiming that the additional information submitted upon renewal was known when the original motion was made, and the defendant did not proffer a reasonable excuse for the failure to present those facts at that time.

Here, ACS has failed to submit any new facts or evidence which would have changed this court's determination. Further, ACS has failed to justify its reason for not presenting the caseworker's testimony, when given the opportunity. Accordingly, the court denied ACS's motion for leave to renew their June 19, 2009 application, which requested that the court enter a finding that the Commissioner made reasonable efforts to avoid the removal of the subject children.

The Adoption and Safe Families Act (hereinafter ASFA) was enacted in 1997, via Public Law 105-89, with the primary goal of "promot[ing] the adoption of children in foster care." ASFA provides that "[i]n order for a State to be eligible [for foster care and adoption assistance] payments," the state must make reasonable efforts to prevent the separation of a respondent parent from his or her children. (42 USC § 671 [a] [15].) Therefore, a state loses its eligibility for federal funding in a particular proceeding wherein a court enters a no-reasonable-efforts finding.

The United States Court of Appeals, in *New York ex rel. N.Y. State Off. of Children & Family Servs. v United States Dept. of Health & Human Services' Admin. for Children & Families* (556 F3d 90 [2d Cir 2009]), held that the statutory definition of "reasonable efforts," as expanded by enactment of the Adoption and Safe Families Act, unambiguously incorporated into the statute a condition of foster care maintenance reimbursement on a judicial determination that reasonable efforts were made with respect to the child.

Legislative history indicates that these amendments were prompted by the growing belief that federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents. Congress decided that rather than abandon the federal policy of helping troubled families, what is needed is a measured response to allow states to adjust their statutes and practices so that in some circumstances states will be able to move more efficiently toward terminating parental rights and placing children for adoption. Thus, the amended statute requires reasonable efforts not only to avoid the removal of a child to foster care, but to provide a child in foster care with a permanent placement, with the caveat that the health and safety of the child is always the paramount concern guiding these efforts. (*Id.* at 95.)

The ASFA reasonable efforts requirement is reflected both in New York statute and in New York case law. The Family Court Act requires in section 1027 (b) (ii) that the court determine whether the state made reasonable efforts

"to prevent or eliminate the need for removal of the child from the home and, if the child was removed from his or her home prior to the date of the hearing held under . . . this section, where appropriate, that reasonable efforts were made to make it possible for the child to safely return home."

In the New York Court of Appeals *Nicholson v Scoppetta* decision, the Court in its analysis explained that the federal government conditioned receipt of foster care funding upon a reasonable efforts finding in order "to prevent the children's removal from their homes whenever possible." (3 NY3d 357, 378 [2004], quoting Mem from Cesar A. Perales to Evan A. Davis, Counsel to Governor, July 27, 1988, Bill Jacket, L 1988, ch 478, at 14.) Removal prevention was chosen as a paramount goal behind the statutory reasonable efforts requirement in an effort to "spare children the trauma of removal and placement in foster care." (*Id.* at 379, quoting Mem of Children and Families Standing Comm, Bill Jacket, L 1989, ch 727, at 7.) Further, the Court of Appeals in *Matter of Marino S.* emphasized the "strong public policy of both keeping families together and protecting the health and safety of children." (*Matter of Marino S.*, 100 NY2d 361, 369 [2003].)

Because, as cited earlier, the reasonable efforts requirement of the ASFA applies to all states receiving foster care funding from the federal government, this court finds that case law

from other jurisdictions appropriately extends to this court's analysis of whether ACS made reasonable efforts to prevent the removal of Nancy and Jamie from their home. Two recent Tennessee cases are particularly applicable to the case at hand.

The first decision, *In re A.J.H.*, involved a respondent father with a "reported history of (Bipolar Disorder) and a psychiatric hospitalization." (2005 WL 3190324, *2, 2005 Tenn App LEXIS 740, *6 [Ct App 2005].) The Tennessee Court of Appeals in that case emphasized a "policy decision[ ] that separating parents and children should be a remedy of last resort." (2005 WL 3190324, *8, 2005 Tenn App LEXIS 740, *22-23.) The court further reasoned that "[r]easonable efforts entail more than simply providing parents with a list of service providers and sending them on their way. The Department's employees must . . . assist parents." (2005 WL 3190324, *9, 2005 Tenn App LEXIS 740, *26.)

In 2007, the same court rendered the *In re A.R.* decision, stating that "[t]he reasonableness of the Department's efforts . . . is dependent upon whether the services rendered were adequate to meet the needs of the family." (2007 WL 4357837, *1, 2007 Tenn App LEXIS 766, *1 [Ct App 2007].) In addition, the court stated that "[t]he record fails to establish that the Department provided the essential psychological services, without which the other services provided by the Department could not meet the needs of either parent or the family." (2007 WL 4357837, *1, 2007 Tenn App LEXIS 766, *2.)

Here, ACS did not provide this mother with sufficient services or referrals in response to her significant psychiatric needs. Although this mother informed ACS that she was engaged in services for her mental health, ACS had a duty to ensure that the services were appropriate and to expand her services if necessary, to prevent the need for the children's removal. ACS knew that the mother was psychiatrically hospitalized several times because she had not followed her prescribed psychotropic medicinal regimen; and that when the mother was hospitalized the children were being cared for by their 18-year-old sibling. ACS should have provided additional services to this mother and family, including, intensive case management. ACS should have also sought Family Court jurisdiction over this family to request a court order of supervision to ensure that the mother attended her psychiatric appointments, took her medication and progressed in her therapeutic services that were already in place.

No dispute exists regarding the fact that ACS had a multitude of interactions with this family. However, during none of these interactions did ACS provide this family with the extent of services necessary to address the mother's and Jamie's unique needs. At the June 22, 2009 section 1027 hearing, Matthew Davis, the ACS caseworker, informed the court that the mother had told him she was receiving mental health services. However, that provider told Mr. Davis that the mother was still at an intake stage, and that the mother was not keeping her appointments in a timely manner, so she was getting medication but not psychotherapy. Mr. Davis further informed the court that ACS consulted with its own mental health specialist, who said that since the mother already had services, ACS services would be redundant. (Section 1027 hearing tr at 21.) Mr. Davis stated that on June 17, 2009 he told the mother to come to the ACS office for a child safety conference, but she failed to show up; Mr. Davis added that ACS's policy was to go forward with the conference whether or not the parent appeared. "The problem was," he told the court, "we were trying to find an agency that would monitor the mother to make sure she would take her medication. At the time, we did not have an agency that would ensure that the mother takes her medicine and ensure the safety of the children." (Section 1027 hearing tr at 19.)

This court finds, just as the Tennessee Court of Appeals found in the *In re A.R.* decision, that without the requisite medical services, "the other services provided by the Department could not meet the needs of [the] parent or the family." The court therefore also finds that, considering the mother's psychiatric needs and Jamie's special needs, ACS's efforts to keep this family together did not rise to a reasonable level.

ACS requests an alternative finding that under the particular circumstances of this case, removal of the subject children was acceptable without reasonable efforts to prevent removal. ACS relies upon two Family Court Act provisions, section 1027 (b) (iii) and section 1028 (c), which authorize courts to find that "reasonable efforts to prevent or eliminate the need for removal of the child from the home were not made but that the lack of such efforts was appropriate under the circumstances . . . ."

In an attempt to justify its position, ACS points to an occurrence on June 18, 2009, when a child protective specialist went to the mother's home and "observed respondent mother, with the subject child Jamie in her arms, aggressively trying to force a bottle into Jamie's mouth" (aff of counsel at 12). Rather than

finding that reasonable efforts were not made, but the lack of the efforts were appropriate under these circumstances, that event, this court finds, exemplifies how Jamie was endangered by ACS's long-standing lack of efforts to keep this family unified and safe.

Further, ACS first referred this family for services in July of 2007 (aff of counsel at 6). ACS had nearly two years to intervene to both protect these children and prevent the need for their removal. During this period, ACS had ample opportunity to file a petition and seek a court order of supervision to ensure that this mother complied with her therapeutic treatment as well as to ensure that Jamie was receiving her necessary services, thereby increasing the likelihood of avoiding an order to remove the subject children from their mother.

ACS has further taken the position that a judicial finding that ACS made efforts to return the children to their parent or parents after removal can serve as an "alternative" to a finding of efforts to prevent removal of the subject children. The court rejects such an argument because ACS's position is contrary to the clear language of Family Court Act §§ 1027 and 1028 and the legislative intent behind those statutory sections. Such language mandates the use of reasonable efforts both to prevent removal and to return children to their parents after removal. The relevant language of section 1027, which applies to Family Court hearings regarding temporary removal of children without a court order, is found in section 1027 (b) (ii):

> "[T]he court shall consider and determine in its order . . . whether reasonable efforts were made prior to the date of the hearing held under subdivision (a) of this section to prevent or eliminate the need for removal of the child from the home *and*, if the child was removed from his or her home prior to the date of the hearing held under subdivision (a) of this section, where appropriate, that reasonable efforts were made to make it possible for the child to safely return home." (Emphasis added.)

The language of section 1028 (b), which governs parental applications for return of children after temporary removal, reads similarly:

> "In determining whether temporary removal of the child is necessary to avoid imminent risk to the child's life or health, the court shall consider and determine in its order whether continuation in the

child's home would be contrary to the best interests of the child and where appropriate, whether reasonable efforts were made prior to the date of the hearing to prevent or eliminate the need for removal of the child from the home *and* where appropriate, whether reasonable efforts were made after removal of the child to make it possible for the child to safely return home." (Emphasis added.)

The clear language of the New York statutes requires efforts to prevent removal in addition to efforts to return children to their parents. Indeed, this bipartite requirement mirrors the reasonable efforts language of ASFA, codified in part by 42 USC § 670 *et seq*. The most pertinent language is found at 42 USC § 671 (a) (15) (B) (i) and (ii), which state the following:

"[R]easonable efforts shall be made to preserve and reunify families—

"(i) prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; *and*

"(ii) to make it possible for a child to safely return to the child's home." (Emphasis added.)

Clearly, ACS's reasonable efforts to return Nancy to her mother do not negate the agency's initial lack of reasonable efforts to prevent removal of the children. This court's finding that reasonable efforts are required at both the removal and reunification stages of child protective proceedings is consistent not only with the statutory provisions, but also with the legislative intent behind the Family Court Act.

To that end, the court must interpret a statute in a manner that is consistent with the legislative intent of that statute. The court in *Matter of Commissioner of Social Servs. v Vito G.* stated that "[t]he foremost consideration in construing a statute is to give effect to the Legislature's intent and to give meaning to the spirit and purpose of the law. The court must read and interpret the language of a statute in a way that furthers its goals and purposes." (171 Misc 2d 315, 318 [Fam Ct, Ulster County 1996].)

Family unity is the unambiguous legislative intent behind the statutes that govern child protective proceedings. New York case law is also unambiguous in its adherence to the "strong public policy of both keeping families together and protecting the health and safety of children." (*Matter of Marino S.*, 100 NY2d 361, 369 [2003].) Interpreting the Family Court Act to find that it is reasonable for ACS to not make reasonable efforts

to avoid the initial removal of children from their parents, when reasonable efforts are made to return children to their homes, would fail to effectuate the legislative intent to keep families together as long as the child is not at imminent risk.

Therefore, this court rejects the statutory interpretation put forth by ACS in support of its motion and holds that pursuant to the statute the state must make reasonable efforts at both the removal and reunification stages of child protective proceedings, unless the exception applies.

ACS lastly argues that the court did not afford adequate opportunity to present evidence of reasonable efforts to prevent removal. ACS contends that the inquiry done by the court at the June 22, 2009 hearing did not provide ACS sufficient opportunity to present evidence of reasonable efforts to prevent the children's removal. A removal hearing pursuant to Family Court Act § 1027 does not fall within the statutory definition of a fact-finding hearing. Family Court Act § 1044 states that "[w]hen used in this article, 'fact-finding hearing' means a hearing to determine whether the child is an abused or neglected child as defined by this article." The statute mandates that a section 1027 hearing is held to determine whether "removal is necessary to avoid imminent risk to the child's life or health." (Family Ct Act § 1027 [b] [i].) The imminent risk analysis is of an emergency nature and not as expansive as a determination of whether a child is abused or neglected.

Family Court Act § 1046 (c), which governs evidence in all hearings that are not considered fact-finding hearings, allows admittance of any evidence that is "material and relevant." This court finds that especially in the context of a section 1027 removal hearing, unrefuted representations made by an ACS attorney and sworn statements contained within a petition and addendums are material, relevant and valid bases for the court's no reasonable efforts finding. Therefore, ACS was not deprived of an opportunity to present sufficient evidence simply because the caseworker did not specifically testify as to the agency's efforts to avoid a removal of these children. According to the caseworker's and counsel's statements made on the record, as well as the sworn petition and addendums during the Family Court Act § 1027 hearing, the court finds that ACS made no reasonable efforts to prevent or eliminate the removal of the subject children from their home prior to June 18, 2009.

It should also be noted that at both the June 22, 2009 and the August 19, 2009 proceedings before this court, ACS was

afforded opportunity to present additional evidence regarding reasonable efforts to prevent the removal of Nancy and Jamie. Further, ACS declined an opportunity on the return date of this motion to proceed with an evidentiary hearing as to this court's no reasonable efforts finding. Insofar as there are no disputed facts or representations, the court finds that ACS was given an adequate opportunity to present evidence of reasonable efforts to prevent the children's removal from this mother.

The condition that a judicial determination that reasonable efforts to prevent a child from entering into foster care were made by a social services agency before the state can be eligible for foster care maintenance reimbursement was enacted to punish the state and hold it accountable when its social services agencies fail to do what the federal law mandates. Here, ACS failed to make reasonable efforts to prevent Nancy and her sister Jamie from entering into foster care. It is undisputed that ACS knew that this mother had three involuntary psychiatric hospitalizations in the span of 14 months and that her 18-year-old son was caring for his two younger siblings. ACS also knew that in April, two months before ACS filed this petition, the mother locked one of Jamie's therapists in a room and that none of Jamie's other therapists would come to the home, and that this three-year-old Down syndrome child was not receiving the services she needed. Yet ACS did nothing but repeatedly "counsel" the mother to take her medication, which is completely inadequate and unreasonable, given their own allegations in their neglect petition.

As a result of this judicial determination that no reasonable efforts were made to avoid the removal of these children from this mother, ACS will not receive federal foster care reimbursement funds, punishing New York for noncompliance with federal mandates.

## Conclusion

Based upon the foregoing analysis, this court finds that ACS did not make reasonable efforts to prevent or eliminate the need for Nancy's and Jamie's removal from their mother's care and custody. In addition, the circumstances of this case do not make it appropriate for ACS to have failed to make reasonable efforts to prevent the children's removal. This lack of reasonable efforts to prevent removal cannot be cured by ACS's later

efforts to reunite the children with their mother. Finally, this court holds that an evidentiary hearing involving caseworker testimony is not a necessary prerequisite to a valid no reasonable efforts finding under the facts and circumstances of this case.