In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-1958, 09-1962 & 09-1963

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN ANDERSON, RICK HARRE, and
RONALD S. MACERI,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Southern District of Illinois.
Nos. 4:99CR40099-003, 4:98CR40104-006-JPG,
4:01CR40057-10-JPG—**J. Phil Gilbert**, *Judge.*

ARGUED AUGUST 4, 2009—DECIDED OCTOBER 9, 2009

Before FLAUM, KANNE and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Only one thing links the three cases that we have consolidated for argument and disposition here: the question whether the district court correctly understood our decision in *United States v. Head*, 552 F.3d 640 (2009), as precluding its authority to impose, as a condition of supervised release, place-

ment in a halfway house. Ronald Maceri, Kevin Anderson, and Rick Harre each violated the conditions of his supervised release, and each asked that he be given a shorter term of re-imprisonment to be followed by placement in a halfway house as one condition of his new supervised release. Understanding *Head* to preclude that disposition, the district court instead imposed a new term of imprisonment with a recommendation to the Bureau of Prisons ("BOP") that it place each man in a halfway house during the last six months of his sentence. All three now argue that this violated 18 U.S.C. § 3553(a), because it resulted in a term of imprisonment longer than necessary. We must decide whether *Head* requires this result.

## I

### A. Maceri

In July 2002, Maceri pleaded guilty to conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Initially, the district court sentenced him to a total of 156 months' imprisonment, but later it reduced the term to 104 months, because of Maceri's substantial assistance to the Government. See FED. R. CRIM. P. 35(b). Maceri began his term of supervised release in November 2008.

He did not spend that time well. Only a month later, in December 2008, Maceri's probation officer petitioned the court for revocation of supervised release, alleging that Maceri had failed to report to the officer, maintain

employment, disclose a change in residence, attend a substance-abuse appointment, and report for a urinalysis. At a revocation hearing in early February 2009, Maceri admitted the violations. The most serious one was Grade C, which, with Maceri's criminal history category of VI, resulted in an advisory re-imprisonment range of eight to 14 months. See U.S.S.G. § 7B1.4(a).

At the time of his hearing, the decision in *Head* was less than three weeks old, but the district court was well aware of it. The judge questioned whether he was now unable to impose halfway-house placement as a condition of supervised release. He noted, with concern, that over the years he had ordered halfway-house placement frequently, and he commented that "my druthers would be to put him in jail for a period of time as punishment and then give him the help he needs in a halfway house." At the request of both parties, the court then continued the hearing until March 26, 2009, to give the parties and itself an opportunity to review *Head* in more detail.

At the March hearing, Maceri took the position that halfway-house placement should be ordered and that *Head* did not forbid this disposition. Counsel suggested that the district court could achieve this outcome either by releasing Maceri on bond and making residency in the halfway house a condition of bond, or by ordering his placement as a condition of supervised release despite *Head*, relying on the residual authority granted by 18 U.S.C. § 3583(d), which in turn refers to 18 U.S.C. § 3563(b)(22). Counsel also noted, as *Head* had acknowl-

edged, see 552 F.3d at 642 n.1, that Congress amended the passage in 18 U.S.C. § 3583(d) that had excluded halfway-house confinement as a possible condition of supervised release, and that the statute now permits such confinement, though "only as a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available." Pub. L. No. 110-406, § 14(b) (Oct. 13, 2008).

*Head* holds that this amendment does not operate retroactively, see 552 F.3d at 642 n.1. To the extent that it has the effect of authorizing a more severe term of supervised release (one involving greater restraints on personal freedom), counsel here was concerned that retroactive application could raise *ex post facto* concerns. Counsel argued, however, that all Maceri would need to do would be to waive any *ex post facto* objection. That is as far as this line of inquiry went, however; counsel never produced, and Maceri never offered to provide, such a waiver. The court responded that it "heard and understood [Maceri's] argument, but I'm not going to do what you suggest." It imposed a term of 14 months' reimprisonment with a recommendation to the BOP that the final six months be served in a halfway house.

## B. Anderson

In October 2000, Anderson pleaded guilty to two counts of conspiring to distribute and one count of distributing crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The district court initially sentenced him to 188 months in prison, but it reduced the term to

125 months for substantial assistance. Anderson's sentence was further reduced to 100 months in March 2008 after the base offense levels for most crack offenses were reduced retroactively. At that point, he was immediately released from prison.

Like Maceri, Anderson did not achieve a smooth transition to life on the outside. He violated the conditions of his supervised release on many occasions, and in October 2008 the district court ordered him to appear. At that meeting, the court delivered a warning to him, but Anderson did not heed it, and so in January 2009 his probation officer petitioned for revocation of his supervised release. The officer alleged that Anderson had committed numerous violations, including driving without a license, failing to make monthly payments toward his fine, lying to his probation officer, and changing residences without notifying the probation officer.

At his revocation hearing, which was also conducted on March 26, 2009, Anderson admitted that he had violated the conditions of his supervised release. The most serious violation was Grade B, which, with Anderson's criminal history category of IV, resulted in a re-imprisonment range of 12 to 18 months. See U.S.S.G. § 7B1.4(a). Anderson requested a term of 12 months and one day in prison, to be followed by a term of six months in a halfway house as a condition of supervised release. The Government replied that *Head* forecloses that possibility. Anderson disagreed, but he did not offer to waive any potential *ex post facto* arguments. The district court agreed with the Government and imposed

a term of 18 months' re-imprisonment with a recommenda-
tion to the BOP that the final six months be served in
a halfway house.

## C.  Harre

In July 1999, Harre pleaded guilty to conspiring to
distribute methamphetamine in violation of 21 U.S.C.
§§ 846 and 841(a)(1). His initial sentence was 135 months'
imprisonment, but it too was later reduced (in his case
to 90 months) to reward his substantial assistance.
He began his term of supervised release in November 2005.

Harre, too, proved to be incapable of adhering to the
conditions of his release. In May 2008, after testing
positive for cocaine, he received a warning from the
district court. The warning did not deter him, and so in
November 2008 his probation officer filed a petition for
revocation of his supervised release, alleging that Harre
had driven under the influence, fled the scene of an
accident, committed other traffic offenses, illegally pos-
sessed cocaine, drank excessively, and failed to notify
his probation officer after being arrested.

Harre's revocation hearing also took place on March 26,
2009. At the hearing, he admitted that he had violated
the conditions of his release. The most serious violation
was Grade B, which, with Harre's criminal history
category of I, resulted in a re-imprisonment range of
four to 10 months. See U.S.S.G. § 7B1.4(a). Harre
requested a term within the advisory range, asserting
that the district court still had the authority after *Head*

to impose halfway-house placement as a condition of supervised release. He noted that the BOP was not obliged to follow the court's recommendation for such placement during the last six months of the prison term. Like Anderson, Harre did not offer to waive any potential *ex post facto* argument. The district court, suspecting that Harre had been intoxicated when he left the scene of the accident and dubious about the adequacy of Harre's four-month state term of incarceration on the traffic offenses, imposed an above-range term of 20 months' re-imprisonment, again with a recommendation that the BOP place him in a halfway house for the final six months.

## II

All three appellants are represented by the same assistant federal public defender, and all argue that the district court erred in holding that it did not have the authority to order halfway-house placement as a condition of supervised release. This amounts, they urge, to an over-reading of *Head*, which in their view held only that halfway-house placement is not expressly authorized as a discretionary condition of release by §§ 3583(d) and 3563(b), not that it is affirmatively forbidden. They also argue that there were other legal mechanisms that the district court could have used in order to achieve the desired result, including imposing residence in the house as a condition of bond and applying the amended law along with a waiver of possible *ex post facto* rights. (We agree with the parties that the

imposition of a prison sentence six months longer than it would have been, coupled with a recommendation to the BOP for halfway-house placement during that final period, is not an adequate substitute, since the BOP is not bound by any such recommendation.)

Appellants' first argument is hard to square with *Head*. It is true that the primary argument that *Head* considered and rejected was the "scrivener's error" point that the Government had urged successfully in a number of other circuits. See 552 F.3d at 642-43. We did not feel free to ignore the plain language of the statute (as it read at the time of Head's sentencing), and we rejected the proposition that it would be absurd to exclude § 3563(b)(11) (halfway-house placement) as a discretionary condition of supervised release. 552 F.3d at 643-44. We also found no authority in § 3583(d), which, in paragraph 3, appears to permit any condition that "is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 944(a)," but then immediately goes on to authorize "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20) and any other condition it considers to be appropriate." 18 U.S.C. § 3583(d) (2007). Finally, *Head* indicated in a footnote that the catch-all provision did not recapture the power to impose the halfway-house condition found in 3563(b)(11). 552 F.3d at 645 n.2. This theory, however, had not been pressed by the Government, which in *Head* was the party defending the condition.

The most difficult question that these appeals present is whether district courts may impose halfway-house confinement as a condition of supervised release under the catch-all language of the statute, or if the explicit omission of (b)(11) in the version of the statute that governs all three should be understood as an affirmative limitation on the court's power. On the one hand, federal courts have no inherent power to suspend a sentence or to order probation; their authority derives solely from statutes. *Ex parte United States*, 242 U.S. 27, 41-52 (1916); *United States v. Garcia-Quintanilla*, 574 F.3d 295, 300-01 (5th Cir. 2009); *Gov't of the V.I. v. Martinez*, 239 F.3d 293, 297 (3d Cir. 2001); *Knight v. United States*, 73 F.3d 117, 120 (7th Cir. 1995). One consequence of that rule is that district courts do not have inherent authority to modify sentences as they please; to the contrary, a district court's discretion under 18 U.S.C. § 3582(c) to modify a sentence is an exception to the statute's general rule that "the court may not modify a term of imprisonment once it has been imposed." *United States v. Cunningham*, 554 F.3d 703, 707-08 (7th Cir. 2009). Compare *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003) (no inherent authority to order restitution).

On the other hand, the statute not only gave the district courts the authority to impose certain specific discretionary conditions of probation (and supervised release, through § 3583), but it also included the catch-all phrase "and any other condition it considers to be appropriate." Those "other" conditions must respect three limitations. First, the condition must respect the factors set forth in 18 U.S.C. § 3553(a)(1) (nature and

circumstances of offense and history and characteristics of defendant), (a)(2)(B) (adequate deterrence), (a)(2)(C) (protection of the public), (a)(2)(D) (provision of needed educational or vocational treatment, medical care, etc., for the defendant), (a)(4) (recommended Guidelines sentence), (a)(5) (policy statements from the Sentencing Commission), (a)(6) (avoidance of unwarranted disparities), and (a)(7) (need to provide restitution to victims). See 18 U.S.C. § 3583(c). Second, the condition cannot impose any "greater deprivation of liberty than is reasonably necessary" to advance the goals of deterrence, protection of the public, and serving the defendant's correctional needs. § 3583(d)(2). Third, the condition must be consistent with the Sentencing Commission's policy statements. § 3583(d)(3). Section 5D1.3(b) of the Guidelines also addresses the imposition of discretionary conditions of supervised release; in general, it mirrors the statutory language.

Courts have been reluctant to allow additional conditions of supervised release to be imposed under the catch-all provision of § 3583 if the particular condition already has been addressed in the statute. Thus, in *United States v. Ferguson*, 369 F.3d 847 (5th Cir. 2004), the Fifth Circuit held that the catch-all language did not authorize the district court to impose home detention outside the scope already permitted in § 3563(b)(19). And although the district court may require a defendant to comply with a preexisting child support order as a condition of supervised release, see § 3563(b)(20), the court may not require a defendant to pay his child support obligations at a rate different from that previously established by a

state court. *United States v. Lakatos,* 241 F.3d 690, 695 (9th Cir. 2001). On the other hand, the Eleventh Circuit recently held that a reporting requirement for removal of an alien was not forbidden by negative implication, despite the fact that § 3583 specifically addresses other removal requirements. *United States v. Guzman,* 558 F.3d 1262, 1265 n.1 (11th Cir. 2009). Similarly, this court has held that, although a district court may not order repayment of the Government's investigative costs as restitution when the Government is not a victim of the crime, the court is authorized by the catch-all provision of § 3583 to order such repayment as a condition of supervised release. *United States v. Brooks,* 114 F.3d 106, 108 (7th Cir. 1997); *United States v. Daddato,* 996 F.2d 903, 905-06 (7th Cir. 1993); see also *United States v. Cook,* 406 F.3d 485, 489 (7th Cir. 2005) (repayment of "buy" money may be ordered as a condition of supervised release but not as restitution); but see *United States v. Cottman,* 142 F.3d 160, 169-70 (3d Cir. 1998) (holding that conditions of supervised release cannot include a requirement that defendant pay "restitution" to the FBI, because restitution must comply with the provisions of § 3563).

As we have already noted, the central question is whether §§ 3583 and 3563, before the 2008 amendment, should be understood as making placement in a halfway house an affirmatively unlawful condition of supervised release, see *United States v. Gibson,* 356 F.3d 761, 767 (7th Cir. 2004), or if it was simply not something that was pre-authorized by law. This is a distinction that arose with some regularity in the pre-*Booker* sentencing environment. In general, the Sen-

tencing Guidelines gave the trial courts broad discretion to consider "without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. They then prohibited the court from considering certain factors, such as the defendant's race, sex, or religion. U.S.S.G. § 5H1.10. Other factors were simply not mentioned. When considering pre-*Booker* requests for departures, a district court had no legal authority to rely on the forbidden factors, but if the Guidelines were silent about something, then the court could consider it and made a decision whether that factor was sufficient to take the case out of the "heartland" of the Guidelines. See, *e.g., United States v. Ali*, 508 F.3d 136, 148 (3d Cir. 2007); *United States v. Hernandez*, 330 F.3d 964, 988 (7th Cir. 2003); see generally *Koon v. United States*, 518 U.S. 81, 92-96 (1996).

Although the signals we have from Congress are mixed, we see nothing in the pre-2008 statutory scheme that supports the proposition that Congress intended to make residence in a halfway house flatly illegal. To the contrary, halfway-house placement has always affirmatively been authorized as a discretionary condition of probation. See 18 U.S.C. § 3563(b)(11). Although it was excluded from the list of discretionary conditions expressly permitted as a condition of supervised release, see 18 U.S.C. § 3583(d) (2007), the statute was otherwise silent about this particular condition. It did, however, include the catch-all provision, indicating that Congress wished to confer broad discretion on the district courts to fashion appropriate conditions of release

that complied with the broad goals of sentencing. We add as well that, in our view, the 2008 amendment does not carry with it the negative inference that halfway-house placement fell beyond the scope of the residual clause prior to the amendment. As we discussed at length in *Head*, the omission of halfway-house placement from the list of permitted conditions was almost certainly accidental, and we understand the 2008 amendment simply to be correcting that glitch in the statute. Under different circumstances, a repeal or an amendment might carry different implications for the proper use of residual powers.

Now that the question is squarely before us, we conclude that placement in a halfway house should be viewed as a legitimate additional condition not affirmatively authorized by the statute, rather than one expressly forbidden. (Because this holding has the effect of restricting *Head* significantly, we have circulated this opinion to the full court under Circuit Rule 40(e). No judge wished to hear the case *en banc*.) The district court is therefore free to consider halfway-house placement as a possible condition of supervised release, provided that in the particular cases it complies with the restrictions we have noted above on the use of the catch-all authority.

### III

This decision makes it unnecessary for us to reach appellants' alternative arguments based on the *Ex Post Facto* clause of the Constitution and the court's power

to impose conditions in connection with a bond. We hereby REMAND all three cases to the district court for further proceedings consistent with this opinion.