# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3619

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMILE M. HEAD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04 CR 30092—**William D. Stiehl**, *Judge.*

ARGUED JUNE 4, 2008—DECIDED JANUARY 15, 2009

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Defendant Jamile Head claims the district court improperly sentenced him to serve six months in a "residential reentry center" as a discretionary condition of his supervised release. We agree that the district court exceeded its authority in issuing this sentence because it disregarded the plain language of 18 U.S.C. § 3583(d), which, at the time, specifically omitted this condition from a list of permissible discretionary conditions. Therefore, we vacate Head's sentence

and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2004, Head pled guilty to possession of a firearm by a felon. He was sentenced to 30 months' imprisonment followed by three years of supervised release. While Head was on supervised release, the probation office filed a petition to revoke it, alleging that Head had violated his release terms by (among other things) committing additional crimes and failing to file monthly reports with the probation office. The district court granted the petition and revoked Head's supervised release. It then sentenced him to 24 months' imprisonment, followed by one year of supervised release.

The district court specified that the first six months of the new supervised release term had to be served in a "residential reentry center." Head objected to this condition in his sentencing memorandum and at the sentencing hearing. He raises the same argument on appeal.

## II. ANALYSIS

The only issue for us to decide is whether the district court had the authority to order, as a discretionary condition of supervised release, that Head serve time in a residential reentry center after his release from prison. At the time of Head's sentencing, 18 U.S.C. § 3583(d) defined the permissible discretionary conditions of supervised

release by incorporating by reference "any condition set forth as a discretionary condition of probation in [18 U.S.C. §] 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate."[1] The parties agree that the residential reentry center in which Head was sentenced to serve fell within the scope of 18 U.S.C. § 3563(b)(11), which provides that a person

---

[1] On October 13, 2008, after Head had been convicted and sentenced, Congress amended the quoted passage in 18 U.S.C. § 3583(d) to read, "any condition set forth as a discretionary condition of probation in *section 3563(b)*. . . . " (emphasis added). As a result, the cross-reference in 18 U.S.C. § 3583(d) now includes section 3563(b)(11) as a permissible condition of supervised release. The imposition or revocation of supervised release is part of the penalty for the original offense. *Johnson v. United States*, 529 U.S. 694, 700-01 (2000). Under our reading of the statute, the inclusion of section 3563(b)(11) broadens the scope of defendants that are subject to some form of confinement while on supervised release, and there is no indication from Congress that this amendment applies retroactively. When the statute is silent the presumption against retroactivity, particularly in criminal cases, directs us to apply the amendment prospectively. *Id*. at 701-02. Therefore, the new version of section 3583(d) does not apply to Head's appeal. *Cf. United States v. Mallon*, 345 F.3d 943, 946-47 (7th Cir. 2003) ("Procedural innovations that don't tinker with substance . . . are compatible with the ex post facto clause. Section 401(d) of the PROTECT ACT is procedural only and thus must be used on this appeal.") (citation omitted). The relevant question before this court is whether the pre-amendment version of section 3583(d) should be construed to allow the imposition of section 3563(b)(11) as a condition of supervised release.

"reside at, or participate in the program of, a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of probation." Although Congress later amended section 3583(d) to include 3563(b)(11), we interpret the statute as it existed when Head was sentenced.

The problem here is that section 3563(b)(11) is the one discretionary condition of probation that section 3583(d) did not incorporate by reference. This glaring omission suggests the district court lacked the authority to order that Head serve time in a residential reentry center as part of his new term of supervised release.

The government tries to circumvent this problem by pushing a nontextual interpretation of section 3583(d) based on that provision's history. The United States Sentencing Commission Guidelines Manual (U.S.S.G.) summarizes the historical backdrop for this argument:

> Subsection(b)(11) of section 3563 of title 18, United States Code, is explicitly excluded [from 18 U.S.C. § 3583(d)] as a condition of supervised release. Before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 [AEDPA], the condition at 18 U.S.C. § 3563(b)(11) was intermittent confinement. The Act deleted 18 U.S.C. § 3563(b)(2), authorizing the payment of a fine as a condition of probation, and redesignated the remaining conditions of probation set forth in 18 U.S.C. § 3563(b); intermittent confinement is now set forth at subsection (b)(10), whereas subsection (b)(11) sets forth the condition of residency

at a community corrections facility. It would appear that intermittent confinement now is authorized as a condition of supervised release and that community confinement now is not authorized as a condition of supervised release.

However, there is some question as to whether Congress intended this result. Although [AEDPA] redesignated the remaining paragraphs of section 3563(b), it failed to make the corresponding re-designations in 18 U.S.C. § 3583(d), regarding discretionary conditions of supervised release.

U.S.S.G. §§ 5D1.3(e)(1)(note), 5F1.1 (2007). The government claims that Congress made a "clerical error" by failing to amend section 3583(d) when it amended section 3563(b) via AEDPA. It contends that we should correct Congress's oversight by interpreting the pre-amendment version of section 3583(d) to allow district courts to order defendants into community confinement as a discretionary condition of supervised release.

This is an issue of first impression for us. The other circuit courts that have already decided the issue have adopted the government's proposed interpretation. *See United States v. Gilpatrick*, 548 F.3d 479, 482-84 (6th Cir. 2008); *United States v. Del Barrio*, 427 F.3d 280, 283 (5th Cir. 2005); *United States v. D'Amario*, 412 F.3d 253, 256-57 (1st Cir. 2005); *United States v. Griner*, 358 F.3d 979, 981-82 (8th Cir. 2004); *United States v. Bahe*, 201 F.3d 1124, 1136 (9th Cir. 2000); *see also United States v. Arias*, 153 Fed. Appx. 577, 579 (11th Cir. 2005) (unpublished); *United States v. Huffman*, 146 Fed. Appx. 939, 941-43 (10th Cir.

2005) (unpublished). In determining whether to follow their lead, we begin with the plain meaning of section 3583(d) and then examine the rationale behind the other circuits' decisions.

### A.  The plain meaning of section 3583(d) provided that a defendant cannot be placed in a community confinement program as a discretionary condition of supervised release.

The government may be correct that Congress overlooked section 3583(d) when it passed AEDPA. But that doesn't mean we can (or should) do anything about this error. Judges do not read between the lines when a statute's text is clear and its structure is coherent. *See Jaskolski v. Daniels*, 427 F.3d 456, 461-64 (7th Cir. 2005). And there was nothing unclear or incoherent about section 3583(d): it specifically declined to provide courts with the authority to order defendants into community confinement programs as a discretionary condition of supervised release. Even if Congress made a mistake, "'[i]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" *Lamie v. United States Tr.*, 540 U.S. 526, 542 (2004) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (concurring opinion)).

The government maintains, however, that reading the pre-amendment version of section 3583(d) according to its plain meaning would lead to an "absurd" result that we must avoid. *See Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 976 (7th Cir. 2004). The gov-

ernment claims that because section 3583(d) allowed a district court to order that a defendant live at a residential facility that provides only drug and alcohol treatment (per section 3563(b)(9)), it would be illogical not to read the provision as also permitting a district court to order that a defendant live at a residential facility that combines drug and alcohol treatment with other programs, such as employment (per section 3563(b)(11)).

The government misconstrues the scope of the "absurdity" exception. A statute might be absurd because it's linguistically incoherent; that's something we can fix. But when a statute's language is clear, we won't "correct" the statute simply because it makes a bad substantive choice. *See Jaskolski*, 427 F.3d at 462. The error must be much more severe. As the Tenth Circuit has held:

> One claiming that the plain, unequivocal language of a statute produces an absurd result must surmount a formidable hurdle. . . . [W]e can apply the doctrine only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute—that is, when the result would be so bizarre that Congress could not have intended it . . . .

*Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc) (internal quotation marks omitted). This approach to statutory interpretation is hardly new. *See Sturges v. Crowninshield*, 17 U.S. 122, 202-03 (1819) (Marshall, C.J.) (plain meaning of a provision should apply unless "the absurdity and injustice of applying the provision to the case, would be so monstrous, that all man-

kind would, without hesitation, unite in rejecting the application").

The "error" that the government complains of here was not a linguistic one. And applying the statute as written does not lead to a result that is so bizarre or shocking as to allow the district court the discretion to fix it. So the only acceptable amendment to the statute is the one that came from Congress, not from us. *See Lamie*, 540 U.S. at 542.

> **B.    The other circuit courts' interpretations of the pre-amendment section 3583(d) do not persuade us to deviate from the plain language of that provision.**

The First, Fifth, Sixth, Eighth, and Ninth Circuits have issued published opinions adopting the government's argument that despite the plain language of section 3583(d), a district court could have ordered that a defendant serve in a community confinement program as a discretionary condition of his supervised release. *Gilpatrick*, 548 F.3d 479, 482-84; *Del Barrio*, 427 F.3d at 283; *D'Amario*, 412 F.3d at 256-57; *Griner*, 358 F.3d at 981-82; *Bahe*, 201 F.3d at 1136. The Tenth and Eleventh Circuits have issued unpublished orders holding the same. *Arias*, 153 Fed. Appx. at 579; *Huffman*, 146 Fed. Appx. at 942-43.

The First, Fifth, Sixth, Tenth, and Eleventh Circuit decisions rest entirely on the Ninth Circuit's reasoning in *Bahe* and the Eighth Circuit's reasoning in *Griner*, so we focus on those two cases. In *Bahe*, the Ninth Circuit

found that it could not rely on the plain language of section 3583(d) because of an "internal ambiguity":

> Although the absence of a reference in § 3583(d) to subsection (11) suggests that a district court lacks the authority to impose this condition of supervised release, subsection (3) of § 3583(d) suggests that a district court has such authority. Subsection (3) states that a sentencing court may impose any condition of supervised release that "is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a) . . . ." The Sentencing Commission has promulgated one policy statement and a corresponding guideline that are "pertinent" to the resolution of this case. Both expressly authorize a district court to impose community confinement as a condition of supervised release following imprisonment . . . .

> Hence, a district court's authority under subsection (3) of § 3583(d) appears to be at odds with its authority under the portion of § 3583(d) that refers to the subsections of § 3563(b). Because of this internal inconsistency, the meaning of § 3583(d) is unclear.

*Bahe*, 201 F.3d at 1128-30. The court used this "inconsistency" as an opening to look beyond the text of section 3583(d) and adopt the interpretation that the government proposes here. *Id.* at 1130-34.

We disagree with *Bahe* and conclude there was no such inconsistency in section 3583(d). That provision stated in relevant part:

The court may order, as a further condition of supervised release, to the extent that such condition— . . .

>    (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20) and any other condition it considers to be appropriate.

There can be an ambiguity only if one reads section 3583(d)(3) disjunctively with the discretionary conditions of probation listed at the end of the section. But the statute suggests these provisions should be read <u>conjunctively</u>. It stated that a discretionary condition of supervised release was permissible only if it was consistent with the Sentencing Commission's policy statements <u>and</u> if was listed in 18 U.S.C. § 3563(b)(1)-(b)(10), (b)(12)-(b)(20) (or was captured by the catch-all provision, "any other condition it consider[ed] to be appropriate").[2] So even if the Sentencing

---

[2] We do not believe (and the government does not contend) that the catch-all provision recaptures the conduct covered by section 3563(b)(11). Our conclusion stems from the famous maxim, *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of another). *See, e.g., In re Globe Bldg. Materials, Inc.*, 463 F.3d 631, 635 (7th Cir. 2006). That Congress expressly excluded community confinement as a discretionary

(continued...)

Commission said that community confinement could be imposed as a discretionary condition of supervised release, the omission of section 3563(b)(11) prevented district courts from imposing that condition. *See United States v. Mills*, 186 F. Supp. 2d 965, 969 (E.D. Wis. 2002).

Moreover, the "inconsistency" that *Bahe* complained of was eventually resolved, as the Sentencing Commission later recognized that the text of section 3583(d) appeared to exclude community confinement as a permissible discretionary condition of supervised release. *See* U.S.S.G. §§ 5D1.3(e)(1)(note), 5F1.1 (2007). So *Bahe*'s reason for looking beyond section 3583(d)'s plain language is no longer viable.

Turning to *Griner*, the Eighth Circuit characterized the change to the probation statute as a "bookkeeping change" and relied on a "well-settled canon" of statutory construction:

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. . . . Such adoption takes the

---

(...continued)
condition of supervised release implies that it did not want courts to use the catch-all provision as an alternate basis for imposing this condition. *See United States v. Mills*, 186 F. Supp. 2d 965, 970 (E.D. Wis. 2002). *But see Bahe*, 201 F.3d at 1134-35.

statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute so taken unless it does so by express intent. The weight of authority holds this rule . . . respecting two separate acts applicable where, as here, one section of a statute refers to an-other section which alone is amended.

*Griner*, 358 F.3d at 982 (quoting *Hassett v. Welch*, 303 U.S. 303, 314 (1938) (internal quotation marks omitted) (quoting 2 *Sutherland on Statutory Construction*, 787-88 (2d ed. 1904) (footnotes omitted))); *see also Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 625 (1838) (noting that state statutes that had adopted British statutes by reference were "considered as referring to the law existing at the time of adoption"). Applying this canon (we'll refer to it as the "cross-reference canon"), the Eighth Circuit con-cluded that "§ 3583(d) included the language of subsec-tion (b)(12) as it was then written to permit commu-nity-corrections confinement." *Griner*, 358 F.3d at 982.

Unlike *Griner*, however, we do not read *Hassett* as creating a categorical rule that compels courts to always read statutory cross-references as pointing to their original targets. Indeed, such a rule would make little sense, as "[w]riting a cross-reference rather than repeating the text to be incorporated is useful precisely because the target may be amended. A pointer permits the effect of a change in one section to propagate to other, related, sections without rewriting all of those related sections*." Herrmann v. Cencom Cable Assocs., Inc.*, 978 F.2d 978, 983 (7th Cir. 1992).

Rather, *Hassett* turned to the cross-reference canon (and two others) only after finding that the meaning of a tax provision it was interpreting was "not so free from doubt as to preclude inquiry concerning the legislative purpose." *Hassett*, 303 U.S. at 309. In particular, it was not clear from the statutory text whether the tax provision applied retroactively and whether a cross-reference to the provision referred to its original text or its later-amended language. *See id.* at 308-14. The Court resorted to canons only because the statute did not have a clear meaning on its face. *See id.* at 313 ("Resort is had to canons of construction as an aid in ascertaining the intent of the legislature. It may occur that the intent is so clear that no such resort should be indulged . . . ."). And the Court has since reminded us that we should not look beyond the language of a statute when its text is plain and its mandate plausible. *See, e.g.*, *Dodd v. United States*, 545 U.S. 353, 359 (2005) ("[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted) (first alteration in original)); *Salinas v. United States*, 522 U.S. 52, 57 (1997) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. Only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language." (internal quotation marks omitted)).[3]

---

[3] In the 70 years since *Hassett* was decided, the Supreme Court has never cited *Hassett* for the cross-reference canon. Indeed, in

(continued...)

Moreover, in our sole decision where we cited *Hassett* for the cross-reference canon, we proceeded in that manner only because the statutory text was ambiguous. *See Dir., Office of Workers' Compensation Programs v. Peabody Coal Co.*, 554 F.2d 310 (7th Cir. 1977). The case involved a welter of cross-references in the Federal Coal Mine Health and Safety Act. We analyzed *Hassett* as part of a lengthy exposition on whether a certain cross-reference was a "specific" reference—one that specifically refers to a target statute and takes the target as originally enacted—or a "general" reference—one that refers to the law more generally and takes a target statute as amended. *Id.* at 322-31; *see also id.* at 323 (noting that "a facially specific legislative reference may, in fact, constitute a general legislative reference"); *Herrmann*, 978 F.2d at 983 (noting that few cross-references are specific). More importantly, we reached this issue only after first concluding that the statutory text was incoherent as written—for example, many of the relevant

---

(...continued)

a recent case, the Court did not apply a presumption that a facially ambiguous self-reference within a Truth in Lending Act provision pointed to the original, unamended version of the provision. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-64 (2004). Instead, the Court relied on "common sense" to reach that conclusion. *Id.* at 63. So *Koons* raises some question whether *Hassett*'s cross-reference canon retains vitality today. *But see State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

cross-references pointed out into the ether. *See Peabody Coal,* 554 F.2d at 320-21 (noting references to repealed statutory provisions). We indicated that we would not have turned to *Hassett* or other interpretive canons had the text been clear. *See id.* at 321-22 (turning to "extrinsic aids to statutory construction" because the court could not "give full literal effect to the words appearing in the original and in the amended incorporating provision"). Similarly, other courts have turned to *Hassett* only after first finding a facial defect with the cross-reference or target statute being interpreted. *See, e.g., United States v. Oates,* 427 F.3d 1086, 1089 (8th Cir. 2005) (correcting a facially defective sentencing guideline provision that referred to the wrong statutory subsection); *Dir., Office of Workers' Compensation Programs v. E. Coal Corp.,* 561 F.2d 632, 635-41 (6th Cir. 1977) (following *Peabody Coal* in a similar case); *Dir., Office of Workers' Compensation Programs v. Ala. By-Products Corp.,* 560 F.2d 710, 715 (5th Cir. 1977) (same); *Krolick Contracting Co. v. Benefits Review Bd.,* 558 F.2d 685, 686-88 (3d Cir. 1977) (same); *cf. Carriers Container Council, Inc. v. Mobile S.S. Assoc., Inc.,* 948 F.2d 1219, 1225 (11th Cir. 1991) (relying in part on *Hassett* to reject a claim that a provision governing interest implicitly incorporated a provision governing compounding of interest); *United States v. Smith,* 683 F.2d 1236, 1238 n.8, 1239-40 (9th Cir. 1982) (en banc) (noting that "the Youth Corrections Act does not mesh nicely with the Probation Act" before concluding that a cross-reference from the former statute to the latter was a general reference (internal quotation marks omitted)); *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1352 (5th

Cir. 1980) (adopting our rationale in *Peabody Coal* for a different statutory scheme).

On occasion, we have also "corrected" cross-references without citing *Hassett*. But these corrections have generally been limited to technical repair work, such as fixing facially defective cross-references that point to unrelated provisions and render statutory schemes incoherent as written. *See, e.g.*, *United States v. Paul*, 542 F.3d 596, 600 (7th Cir. 2008) ("Although the statute cross-references section 3563(a)(4), that is a mistake, for the intended cross-reference obviously is to section 3563(a)(5), a parallel provision concerning mandatory drug testing as a condition of probation."). For example, we interpreted an ERISA cross-reference as pointing to an unamended target after we found that following the cross-reference as written would lead to a "nonsensical" and "bizarre" result. *Herrmann*, 978 F.2d at 981-82. And more recently, we corrected Congress's failure to update a statute that criminalized improper recordkeeping after a provision it referred to (section 355(j)) was renumbered and the new section 355(k) did not refer to recordkeeping at all. *United States v. Bhutani*, 266 F.3d 661, 665-68 (7th Cir. 2001). The Supreme Court has also indicated that courts can turn to a statute's history to identify the target of a facially ambiguous reference. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-64 (2004) (determining that an ambiguous reference to "this subparagraph" pointed to the subsection at the time of the statute's enactment).

So we can certainly correct cross-references when it's clear from the statutory text that there is some kind of

error. But that's not what we have here. There was no ambiguity about the object of our cross-reference (18 U.S.C. § 3583(d)). And there was no logical or linguistic inconsistency between the cross-reference and the target statute (18 U.S.C. § 3563(b)(1)-(10), (12)-(20)). Indeed, the statutory scheme tracked perfectly well as written: district courts could not sentence defendants to community confinement as a discretionary condition of their supervised release. An odd result, perhaps, but hardly one that is absurd. *See Jaskolski*, 427 F.3d at 462 ("Today the anti-absurdity canon is linguistic rather than substantive."); *see also United States v. Locke*, 471 U.S. 84, 93-94 (1985) (interpreting a statute that required a filing to be "prior to December 31 of each year" as setting a December 30 deadline, even though Congress might have intended an end-of-the-year deadline). Indeed, there is no objective reason based on the statutory text to conclude that there was any "error" here. And we do not "fix" what we cannot objectively identify as broken, because "what judges deem a 'correction' or 'fix' is from another perspective a deliberate interference with the legislative power to choose what makes for a good rule." *Jaskolski*, 427 F.3d at 462.[4]

Because sections 3583(d) and 3563(b) were unambiguous and fit together coherently, our job is simply to follow

---

[4] Even if there were any ambiguity in section 3583(d), we would likely construe it in favor of the defendant per the rule of lenity. *See, e.g.*, *United States v. Thompson*, 484 F.3d 877, 881 (7th Cir. 2007).

the law as written. So we reject the government's invitation to circumvent the plain language of these statutes by invoking the cross-reference canon. And we therefore conclude that the district court exceeded its authority in ordering that Head serve in a residential reentry program during his new term of supervised release.

Because this decision creates a conflict among circuits, it was circulated to all active judges under Circuit Rule 40(e). No judge favored a hearing en banc.

### III. CONCLUSION

We VACATE Head's sentence and REMAND for further proceedings consistent with this opinion.