In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1673

OWNER-OPERATOR INDEPENDENT DRIVERS
ASSOCIATION, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

MAYFLOWER TRANSIT, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-458-C B/S—**Sarah Evans Barker**, *Judge*.

ARGUED SEPTEMBER 18, 2009—DECIDED AUGUST 9, 2010

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and
TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Federal regulations require
motor carriers to have insurance for the protection of
the public, which may be injured by collisions on the
highway. 49 U.S.C. §13906; 49 C.F.R. §376.12(j)(1). Carriers
may provide service through leased equipment—and
a leased truck frequently is owned by its driver, who

comes with the lease. See *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28 (1975). The required insurance must cover any leased gear and its driver.

Mayflower Transit, which transports household goods for people who move to new homes, pays the owner-operator of a leased truck a negotiated price per mile (or per ton-mile), plus fees for other services such as packaging and loading the shipper's goods. Mayflower reduces these payments by the cost of insurance. The process is called a chargeback. Some of the lessors, and an association that represents them, contend in this suit under 49 U.S.C. §14704(a)(2) that a chargeback violates 49 C.F.R. §376.12(*i*), which provides that "the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." As the owner-operators see things, a requirement to reimburse Mayflower for the expense of insurance is the same thing as a purchase of insurance from Mayflower.

The district court dismissed some of the owner-operators' claims for relief after concluding that the statute of limitations is two years. Neither §14704(a)(2) nor any other statute sets a period of limitations for suits on its authority. The owner-operators contended that the residual statute of limitations, 28 U.S.C. §1658(a), thus prescribes a four-year period. (Section 14704 was enacted in 1995 and therefore is potentially covered by §1658, which applies to federal statutes enacted or amended after December 1, 1990. See *Jones v. R.R. Donnelley & Sons*

*Co.*, 541 U.S. 369 (2004).) But the district court concluded that the two-year period that §14705(c) specifies for administrative complaints under §14704(b) also applies to suits under §14704(a)(2). The district judge separately concluded that a chargeback differs from a compulsory purchase of insurance, so the owner-operators lost on the merits.

We start with the statute of limitations, which affects not only the chargeback question but also any other claims within the scope of §14704(a)(2). Plaintiffs' suit included many subjects, and although most are not pertinent to this appeal (the parties accept the district judge's disposition of them), the relief on some may depend on the length of the limitations period—as the relief on the chargeback issue certainly does, should we rule in the owner-operators' favor. An appeal from a final decision brings up earlier interlocutory decisions, such as the ruling about limitations. And the appeal *is* from a final decision—at least, from a decision that was made final after oral argument. Mayflower dismissed some counterclaims without prejudice, planning to reinstate them after the appeal. That made the decision non-final. See *Horwitz v. Alloy Automotive Co.*, 957 F.2d 1431 (7th Cir. 1992); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776–77 (7th Cir. 1999). But after the problem was pointed out at oral argument, the parties filed a stipulation resolving the counterclaims with prejudice. That made the decision final, and as in other recent appeals we give effect to this belated disposition. See *National Inspection & Repairs, Inc. v. George S. May International Co.*, 600 F.3d 878, 883–84 (7th Cir. 2010).

Section 14704(b) allows shippers to recover damages when a carrier charges more than the rate specified in its tariff. Section 14705(c) reads: "A person must file a complaint with the Board or Secretary, as applicable, to recover damages under section 14704(b) within 2 years after the claim accrues." This limit on shippers' time to launch an administrative proceeding to recover an over-charge defined by a tariff is unrelated to §14704(a)(2), which allows carriers to enforce legal rights established by the statute or regulation. But the district judge thought that the failure of §14705(c) to mention §14704(a)(2) was a scrivener's error. The judge concluded that Congress had changed the numbering of §14704's subsections and failed to adjust §14705 to match, leaving §14705(b) pointing to the wrong part of §14704. That could be corrected, the judge held, by reading the reference to §14704(b) as if it were a reference to §14704(a)(2).

The problem with this approach is that Congress enacted, and the President signed, a statute that places a two-year period of limitations on administrative com-plaints under §14704(b), while leaving suits under §14704(a)(2) to the four-year residual statute of limita-tions. A judge's belief that Congress planned to do some-thing different but bollixed the job does not alter what the enacted statute provides. The Constitution gives the force of law only to what is actually passed by both houses of Congress and signed by the President. What Congress meant to do, but didn't, is not the law. So when a statute's language conflicts with its legislative history—a fair description of the events that led to §14704 and §14705—it is the enacted text rather than

the unenacted legislative history that prevails. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568–71 (2005); *In re Sinclair*, 870 F.2d 1340 (7th Cir. 1989).

Courts sometimes take liberties with texts that seem to be garbled or absurd, on the theory that when there is a choice between sense and nonsense both the legislature and the President prefer sense. But there is nothing absurd about §14705(b) as written. It points to a statute that could do with a period of limitations. Whether a four-year period applies to §14704(a)(2) and a two-year period to §14704(b), or the reverse, neither outcome is absurd.

Several opinions that post-date the district court's resolution of the limitations issue hold that only a linguistic glitch permits invocation of the anti-absurdity canon. See, e.g., *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008); *United States v. Logan*, 453 F.3d 804 (7th Cir. 2006), affirmed, 552 U.S. 23 (2007). Allowing the "correction" of substantive problems would make too much inroad on the legislative power, because judges tend to see as "absurd" propositions with which they disagree. And in *United States v. Head*, 552 F.3d 640 (7th Cir. 2009), we held that a legislative blunder in adjusting cross-references when amending a statute does not justify invoking the doctrine of scrivener's error, unless the text as enacted is hash. The principle behind *Head* applies equally to §14705(b), whose cross-reference makes sense. Legislative history—what would in contract interpretation be called extrinsic ambiguity—does not justify revising a text that has no intrinsic ambiguity or any difficulty in application.

Two other courts of appeals have addressed this subject. *Owner-Operator Independent Drivers Association v. United Van Lines, LLC*, 556 F.3d 690, 692–96 (8th Cir. 2009); *Owner-Operator Independent Drivers Association, Inc. v. Landstar System, Inc.*, 541 F.3d 1278, 1297 (11th Cir. 2008). Both have held that §14705(b) must be enforced as written, and that the period of limitations for suits under §14704(a)(2) therefore is four years. We agree with those decisions. (*United Van Lines* discusses the incongruous fact that claims under §14704(b) appear to be subject to two different statutes of limitations, one from §14705(b) and another from §14705(c). We have nothing to add to its discussion. No matter what one makes of the oddity, it does not imply anything about how long people have to sue under §14704(a)(2).)

Let us turn, then, to the question whether the chargeback violates §376.12(*i*). Plaintiffs say that it does, because to pay for something is the same thing as to purchase something. But that can't be right. Suppose that Mayflower were to cover the cost of insurance by reducing the amount it offers per mile of transportation. "We will pay you $1.10 per mile and charge back 10¢ per mile for insurance" is identical to "we will pay you $1.00 per mile and not charge you anything for in-surance." No one would say that the latter violates §376.12(*i*); it is not a "sale" of insurance any more than the statement "we will pay you $1.00 per mile and not charge you anything to cover the expense of renting our buildings and paying the telephone workers who took the shippers' orders" would amount to "selling" the owner-operators the labor of the telephone workers, or a

slice of Mayflower's business premises. Cf. *Krzalic v. Republic Title Co.*, 314 F.3d 875 (7th Cir. 2002) (charging for title-transfer services does not violate a rule against separate sales or kickbacks in real estate closings).

Plaintiffs treat the chargeback as a sale of insurance *by* Mayflower. Yet it is not an insurer. It is not authorized to underwrite risks. The regulation requires motor carriers to purchase insurance underwritten by *real* insurers, so that persons injured by a motor carrier's operations may find a source of compensation more reliable than the motor carrier itself, which often is thinly capitalized. Mayflower is a large and solvent firm that has been in business for decades; it can pay for its own casualties (and will do so indirectly because its insurer will set an experience-rated premium that covers the costs of indemnity, plus a loading charge for the insurer's administrative overhead). But many other motor carriers are small, and some would take too few precautions against accidents if they anticipated that a major loss would lead them to declare bankruptcy. Then the owners would reap profits as they came in, and use the corporate shield of limited investors' liability to protect themselves against tort judgments. The insurance requirement prevents that. And the regulation places on the motor carrier under whose certificate the service is rendered the obligation to secure insurance; that makes enforcement much easier than placing a separate mandatory-insurance obligation on the many owner-operators who own and lease a single truck. Yet nothing in this rationale for mandatory insurance implies that lessors need not *pay* for the coverage secured through

the motor carrier; as we've observed already, they will pay indirectly (through lower rates per mile) if they do not pay through a chargeback.

If this were not clear from the text of §376.12(*i*) and the fact that Mayflower is not an insurer (so it can't be selling insurance to the lessors), it is made clear by comparing §376.12(*i*) with §376.12(j)(1), which speaks to the topic. This subsection, captioned "Insurance", reads:

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

The reference to chargebacks in the third sentence is incompatible with the owner-operators' contention that chargebacks are "sales" forbidden by §376.12(*i*). Courts do not read regulations to create such a glaring, and unnecessary, inconsistency.

Plaintiffs want us to read the third sentence, which speaks of chargebacks, as limited to the second, which deals with "other insurance coverage . . . such as bobtail insurance." But the third sentence refers to "any" of "this" insurance, and that construction is best under-stood as including the insurance mentioned in the

whole subsection. It would have been easy to write: "If the authorized carrier will make a charge back to the lessor for any of [the other] insurance [mentioned in the previous sentence], the lease shall specify the amount which will be charged-back to the lessor." But that's not what the third sentence says. Section 376.12(j)(1) confirms our understanding of §376.12(*i*): A chargeback for the cost of insurance is not a sale of insurance. The eighth circuit reached the same conclusion in *United Van Lines*, 556 F.3d at 696–97. No court of appeals has held otherwise.

The judgment with respect to chargebacks is affirmed, and the case is remanded for any further proceedings that may be required by our ruling on the limitations issue.