**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2655
_____


UNITED STATES OF AMERICA

v.

CHRISTOPHER MAURY,
                              Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2:12-cr-00011-001)
District Judge:  Hon. Mark R. Hornak
Submitted Pursuant to Third Circuit LAR 34.1(a)
May 16, 2013

Before:  SMITH, FISHER, and CHAGARES, <u>Circuit Judges</u>.

(Filed: July 17, 2013)
_____

OPINION
_____

CHAGARES, <u>Circuit Judge</u>.

On May 29, 2012, the United States District Court for the Western District of

Pennsylvania revoked defendant Christopher Maury's term of supervised release.  Maury

appeals, arguing that the judge improperly held an ex parte conference with the probation

officer during the revocation hearing, that the District Court erroneously required him to

complete the first six months of his new term of supervised release in a community

corrections facility, and that the sentence was substantively unreasonable. For the reasons that follow, we will affirm the judgment of revocation.

## I.

In March 2010, Maury pled guilty to one count of wire fraud, 18 U.S.C. § 1343, in the United States District Court for the Eastern District of Missouri. The conviction arose from conduct that occurred in the summer of 2005. The court sentenced him to twelve months and one day of imprisonment to be followed by a two-year term of supervised release. After Maury's release from custody, jurisdiction over his supervised release was transferred from the Eastern District of Missouri to the Western District of Pennsylvania. On January 12, 2012, Maury's probation officer filed a Petition on Supervised Release. The petition alleged that Maury had violated the conditions of his release by submitting diluted urine samples, failing to report for drug testing on four occasions, and failing to respond to efforts to contact him. A Supplemental Petition on Supervised Release, filed in May 2012, alleged that Maury had, in violation of the conditions of his release, left the judicial district and traveled to Florida without the permission of the court or his probation officer.

At a hearing held on May 29, 2012, Maury admitted to the violations. The Government requested revocation of Maury's release and a sentence of seven to thirteen months of imprisonment, the term recommended by Maury's probation officer. Maury opposed revocation and instead sought house arrest. Maury's mother testified on his behalf and explained that her husband (Maury's father) had recently passed away after a long illness. Maury also addressed the court:

2

> I have never had drugs in my system ever, at any time. [The urine sample] became diluted because probation would come to the house to drug test me and I couldn't go to the bathroom at that time. So Ms. Clark [the probation officer] stated she would be back in an hour, so I would drink a bunch of iced tea or something so I could go to the bathroom when she did come back, then it would come up diluted.

Appendix ("App.") 42a. After hearing from both sides but before making its revocation decision, the court announced that it would take a brief recess so that the judge could consult with Ms. Clark, the probation officer assigned to the case.

Following the break, the District Court revoked Maury's term of supervised release and concluded that "a sentence of incarceration within the guidelines range is needed to address the seriousness of your violations, . . . [and] to protect the public from your criminal conduct and to have any meaningful impact on deterrence." App. 51a. Maury faced an advisory revocation sentence of seven to thirteen months of imprisonment and a statutory maximum of twenty-four months. The court sentenced him to a term of ten months of imprisonment to be followed by twenty-six months of supervised release. The court also imposed the special condition Maury serve the first six months of his supervised release at Renewal House or a similar facility. The parties represent that Renewal House is a community corrections facility, more commonly referred to as a halfway house.

Maury timely appealed the judgment of revocation.

3

II.[1]

A.

Maury first contends that the District Court erred by holding an ex parte conference with Maury's probation officer during the revocation hearing and requests that we remand and reassign the case to a different judge. Because Maury did not object below, we will review for plain error and ask whether Maury has established that there was an error, that the error was plain or "clear and obvious," and that the error affected substantial rights. United States v. Leahy, 445 F.3d 634, 655 (3d Cir. 2006). If we are satisfied that Maury has met his burden, we may exercise our discretion to reverse "if the error[ ] seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. (first alteration in original) (quotation marks omitted).

A defendant who violates the conditions of his supervised release risks the loss of his limited freedom. A district court may, after considering the relevant facts, revoke a term of supervised relief if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). The purpose of a revocation hearing is to "ensure that the decision to revoke . . . freedom is not based on 'erroneous information.'" United States v. Ruby, 706 F.3d 1221, 1226 (10th Cir. 2013) (quoting Morrissey v. Brewer, 408 U.S. 471, 484 (1972)).

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3605, which allows the transfer of jurisdiction over a person on supervised release, and 18 U.S.C. § 3583(e), which governs modification of the conditions of supervised release. We exercise jurisdiction over Maury's appeal under 28 U.S.C. § 1291.

4

A revocation hearing "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply . . . . Revocation deprives an individual[] not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Morrissey, 408 U.S. at 480 (discussing revocation of parole[2]). Yet despite the limitations already placed on an individual serving a term of supervised release, we recognize a releasee's strong interest in remaining outside of prison. That conditional liberty, "although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others." Id. at 482 (quotation marks omitted).

Because a releasee retains a protected interest in his conditional liberty, he is entitled to some procedure before the revocation of that liberty, even if the procedures followed are relatively informal. Id. at 481-82. At a minimum, due process requires that there be: (1) a preliminary hearing to allow "minimal inquiry" by an "independent officer" to determine whether there is probable cause to believe that the parolee or releasee has committed a violation; (2) notice of the hearings; and (3) a final revocation hearing in which the parolee has an "opportunity to be heard." Id. at 485-88. A releasee facing revocation also has a limited right of confrontation, which arises not from the Sixth Amendment's Confrontation Clause, as it would for a criminal defendant, but instead from the Fifth Amendment's Due Process clause. Id. at 489; United States v.

---

[2] We evaluate revocation of supervised release the way we once addressed revocation of parole. See United States v. Huff, 703 F.3d 609, 612 (3d Cir. 2013); United States v. Barnhart, 980 F.2d 219, 222 (3d Cir. 1992).

5

Lloyd, 566 F.3d 341, 343 (3d Cir. 2009). Courts must balance the "'releasee's asserted right to cross-examine adverse witnesses against the government's good cause for denying it.'" Lloyd, 566 F.3d at 343-44 (quoting the Advisory Committee Notes to Rule 32.1(b)(2)(C)).[3]

To assess the impact of ex parte communications, we must consider not only the nature of revocation hearings but also the role of a probation officer. In general, a probation officer acts as a "confidential adviser to the court" and a "neutral information gatherer with loyalties to no one but the court." United States v. Reyes, 283 F.3d 446, 455 (2d Cir. 2002) (quotation marks omitted). But a probation officer may also bring information to the attention of the court that supports the request for revocation and, thus, may play a role "adverse to the defendant in some respects." United States v. Gonzales, 765 F.2d 1393, 1398 (9th Cir. 1985) (discussing a probation officer's participation during defendant's initial sentencing); see also United States v. Barnhart, 980 F.2d 219, 223 (3d Cir. 1992) (characterizing a probation officer as a witness "adverse" to the defendant).

Many courts have looked to United States v. Johnson, 935 F.2d 47 (4th Cir. 1991), to assess challenges similar to the one Maury raises here. In Johnson, the court rejected the defendant's challenge to the ex parte conference:

> Implicit in appellants' argument is the possibility that a probation officer, although acting as an agent of the court, may convey to the court information unfavorable to a

---

[3] Rule 32.1 of the Federal Rules of Criminal Procedure, which governs revocation proceedings, encompasses the requirements set forth in Morrissey and "guarantees [the releasee] 'an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear.'" Id. at 343 (quoting Fed. R. Crim. P. 32.1(b)(2)(C)).

> defendant. The function of a probation officer is to provide the sentencing judge with as much information as possible to enable the court to make a just and informed sentencing decision. <u>We will not presume that a probation officer will act improperly. Further, we rely upon the integrity of district court judges and trust their ability to disregard any attempt to impermissibly influence a sentencing decision</u>.

<u>Id.</u> at 51 (emphasis added); <u>see also</u> <u>United States v. Davis</u>, 151 F.3d 1304, 1306 (10th Cir. 1998) (relying on <u>Johnson</u> and describing a probation officer as an "arm of the court" (quotation marks omitted)); <u>United States v. Stanphill</u>, 146 F.3d 1221, 1224 n.1 (10th Cir. 1998) ("A district court's ex parte communications with a probation officer responsible for sentencing recommendations is not improper per se."). The probation officer in <u>Johnson</u>, the court emphasized, acted "as [the court's] neutral agent." <u>Johnson</u>, 935 F.2d at 50.

Other courts, however, have required disclosure of ex parte communications between the court and a probation officer. In <u>United States v. Gonzales</u>, for instance, the Court of Appeals for the Ninth Circuit declined to find error when the district court stated that it had "disclosed all the information on which [it] relied," including, the court assumed, any information relating to the defendant's sentence disclosed orally to the court. 765 F.2d 1393, 1398 (9th Cir. 1985); <u>see also</u> <u>United States v. Aspinall</u>, 389 F.3d 332, 348-49 (2d Cir. 2004) (holding that contested communication had not violated releasee's due process rights because the district court promptly disclosed the communication and "expressly stated that it would not consider that information in its assessment of the probation revocation petition"), <u>abrogated on other grounds as recognized in</u> <u>United States v. Fleming</u>, 397 F.3d 95, 99 n.5 (2d Cir. 2005); <u>cf.</u> <u>United</u>

7

States v. Christman, 509 F.3d 299, 310-12 (6th Cir. 2007) (vacating and remanding judgment of sentence when district court concededly relied on confidential information disclosed during an ex parte meeting with the probation officer and pretrial services officer); United States v. Hayes, 171 F.3d 389, 392-93 (6th Cir. 1999) (finding plain error when district court relied on undisclosed information from the victims during sentencing).

B.

Here, we must determine whether the probation officer's ex parte communication with the judge — which occurred after Maury admitted to violating the conditions of his supervised release but before his sentence — affected Maury's substantial rights. We hold that it did not. Those courts to conclude that an ex parte communication between a probation officer and the court violated a releasee's due process rights addressed situations in which the releasee challenged the facts that led to revocation. Here, the probation officer's petition and supplemental petition alleged four violations of the conditions of Maury's supervised release: submission of diluted urine samples, failure to report for drug testing, failure to respond to efforts to contact him, and travel outside the judicial district without permission. Though Maury attempted to provide some explanation with respect to the diluted urine samples, he admitted to all four violations prior to the challenged ex parte conference. Thus, although disclosure of the communication may have been appropriate, there is no risk that the ex parte conversation led the court to conclude that Maury had violated the conditions of his release.

8

A finding that a releasee has violated the conditions of his release is not, however, the end of a revocation proceeding. The court must still determine whether revocation, rather than modification, is appropriate, and, if it chooses revocation, calculate an appropriate sentence. We acknowledge that the challenged ex parte communication occurred before the court had made these important decisions. Even so, Maury's claim is a poor candidate for relief on plain error review. Maury had ample opportunity to object; the court announced on the record its intention to meet with Maury's probation officer. Though disclosure of the communication may well have been appropriate, we will not assume, absent an objection that allowed the District Court to address the matter, that the court relied on improper information when selecting revocation and announcing its sentence. See United States v. Pryor, 957 F.2d 478, 481 (7th Cir. 1992) (declining, in the context of revocation of probation, to find plain error in the defendant's "mere speculative allegation that the sentencing judge [had] received additional information in his ex parte meeting with the probation officers"); Johnson, 935 F.2d at 51 ("We will not presume that a probation officer will act improperly. Further, we rely upon the integrity of district court judges and trust their ability to disregard any attempt to impermissibly influence a sentencing decision.").

We therefore conclude that Maury has not established that the communication violated his substantial rights. Because he cannot demonstrate plain error, we will affirm.

III.

Maury next contends that the District Court lacked the authority to require that he spend the first six months of his supervised release at a halfway house. Ordinarily, "we

9

review challenges to the imposition of a special condition of supervised release, as well as a district court's decision to modify the terms of release, for abuse of discretion." United States v. Smith, 445 F.3d 713, 716 (3d Cir. 2006). However, when a defendant raises no objection to the condition during sentencing, we will instead review for plain error. United States v. Maurer, 639 F.3d 72, 77 (3d Cir. 2011).

Maury argues that the 2005 version of the statute did not authorize the court to require him to spend the first six months of his supervised release in a community corrections facility.[4] The Government contends that despite amendments that altered the statute between 1996 and 2008, the supervised release statute has always authorized a requirement that a defendant reside in a community corrections facility.

The statute that governs the conditions of supervised release, 18 U.S.C. § 3583(d), allows the court to impose the discretionary conditions of probation listed in 18 U.S.C. § 3563(b), the section that controls probation. The current version of the supervised release statute allows the court to order "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate," 18 U.S.C. § 3583(d), including a condition requiring the defendant to "reside at, or participate in the program of, a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons)," 18 U.S.C. § 3563(b)(11) ("subsection 11").

_____

[4] Because we understand revocation and its associated penalties as "part of the penalty for the initial offense," we apply the law in effect in 2005, the year Maury committed his initial offense. Johnson v. United States, 529 U.S. 694, 700-01 (2000).

10

The version of the supervised release statute in effect in 2005 differed from the current version. Though it also incorporated by reference the conditions contained in the probation statute, the version of the supervised release statute in effect from 1996 through 2008 explicitly excluded subsection 11 which then, as now, allowed courts to require residence at a community corrections facility. 18 U.S.C. § 3583(d) (2005) ("The court may order, as a further condition of supervised release . . . any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate." 18 U.S.C. § 3583(d) (2005). Maury contends that the exclusion of subsection 11 deprived the court of the authority to require his residence at the Renewal House.

Every court of appeals to consider the issue has held that district courts never lost the authority to order residence at a community corrections facility. See, e.g., United States v. Bahe, 201 F.3d 1124, 1133 (9th Cir. 2000). Many have attributed the omission of subsection 11 to a scrivener's error that occurred when the 1996 amendments to the probation statute, 18 U.S.C. § 3563, moved the community corrections facility provision from subsection 12 to subsection 11. Id.

For instance, in Bahe, the defendant raised an argument identical to Maury's — that because § 3583(d) specifically omitted reference to subsection 11 of the probation statute, the district court lacked the authority to require residence at such a facility as a condition of supervised release. Id. at 1128. The Court of Appeals for the Ninth Circuit rejected the claim, holding instead that the district court retained the authority to impose the condition despite the omission in the supervised release statute. Id. at 1126. The

11

court reasoned that "if Congress intended to abandon a discretionary condition of supervised release that had been the law for over twelve years, surely it would have mentioned this intent somewhere in the legislative history." Id. at 1132. Instead, the failure to reference subsection 11 was an "inadvertent casualty of [the] complex drafting process" of the 1996 amendments and the fact that, prior to those amendments, subsection 11 had referred to intermittent incarceration — a condition not relevant to supervised release. Id. at 1132 (alteration in original) (quotation marks omitted). The court also held that "catch-all provision" of § 3583(d) authorized a broad range of discretionary conditions of release, including residence in a halfway house. Id. at 1134.

The Court of Appeals for the Eighth Circuit reached the same result via a slightly different route. In United States v. Griner, 358 F.3d 979, 982 (8th Cir. 2004), the court understood the omission of a reference to subsection 11 as the result of a "bookkeeping change" to the probation statute and understood Congress as incorporating the probation statute "'as it exist[ed] at the time of adoption,'" which excluded "'subsequent additions or modification by the statute so taken unless it does so by express intent.'" Id. (quoting Hassett v. Welch, 303 U.S. 303, 314 (1938)). By relying on Bahe or Griner, every other court of appeals to consider the issue has likewise held that district courts may order residence in a halfway house as a discretionary condition of supervised release. See United States v. Head, 552 F.3d 640, 644 (7th Cir. 2009) ("The First, Fifth, Sixth, Tenth, and Eleventh Circuit decisions rest entirely on the Ninth Circuit's reasoning in Bahe and the Eighth Circuit's reasoning in Griner."); see also United States v. Gilpatrick, 548 F.3d 479, 482-83 (6th Cir. 2008) (holding that district courts retained the power to order

12

residence at a community corrections facility as a condition of release); United States v. Del Barrio, 427 F.3d 280, 283 (5th Cir. 2005) (characterizing the omission of subsection 11 as a "clerical error"); United States v. D'Amario, 412 F.3d 253, 256 (1st Cir. 2005) (same).

Maury asks us to rely on a decision by the Court of Appeals for the Seventh Circuit that held that the exclusion of subsection 11 from the supervised release statute was not a clerical error. Head, 552 F.3d at 643. In Head, the court acknowledged that Congress may have accidentally omitted subsection 11 when it amended the supervised release statute in 1996, but concluded "that doesn't mean we can (or should) do anything about this error. Judges do not read between the lines when a statute's text is clear and its structure is coherent." Id. Nine months later, however, the court addressed a similar situation in United States v. Anderson, 583 F.3d 504 (7th Cir. 2009), and arrived at a different result. The Anderson court understood Head as an opinion limited in scope that primarily addressed the narrow scrivener's error argument advanced by the Government in that case. Id. at 508. Faced directly with the question of whether district courts could ever require that a defendant reside in a community corrections facility as a condition of supervised release, the Anderson court concluded that they could. Id. at 510. The "residual" or catch-all provision of the supervised release statute, the court reasoned, conferred upon courts "broad discretion . . . to fashion appropriate conditions of release," including placement at a community corrections facility. Id. Though Maury asks us to rely on Head as providing persuasive authority, the same court, in Anderson, explicitly

13

authorized the very outcome Maury seeks to avoid:  a requirement that he reside at a halfway house for the first six months of his supervised release.

We join every court of appeals to consider the issue and hold that § 3583(d) authorized district courts to require residence at a community corrections facility from 1996 through 2008.  The catch-all provision of the supervised release statute, which allows the district court to impose a list of enumerated conditions and "any other condition it considers to be appropriate," has always provided courts with the authority to impose a broad range of requirements.  Such a condition may include placement at a community corrections facility.   We therefore hold that the District Court did not err by ordering Maury to spend the first sixth months of his supervised release at Renewal House or a similar facility.

IV.

We turn now to Maury's final contention:  that his sentence was excessive and that the court should have granted a downward variance.  Maury emphasizes that he has committed no new offense since 2005 and that his prolonged incarceration imposes a substantial burden on his mother, who testified to those difficulties at Maury's revocation hearing.

We review the substantive reasonableness of a revocation sentence in the same manner we review a defendant's objection to his initial term of incarceration.  United States v. Bungar, 478 F.3d 540, 542 (3d Cir. 2007).  When a defendant or releasee contends that his sentence is substantively unreasonable, we will review the sentence for for abuse of discretion and consider "the totality of the circumstances."  United States v.

14

Tomko, 562 F.3d 558, 567 (3d Cir. 2009). We will affirm unless "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Id. at 568.

Here, the District Court found that Maury had breached the trust of the court and concluded that

> too often you have not demonstrated that you were worthy of the trust that has been placed in you by judges not only in Pennsylvania and in Missouri, but in South Carolina, in the face of convictions or guilty pleas of dozens of serious charges involving either risk of harm to yourself or others or risks to the financial well-being of other people.

App. 50a. The court also cited the need for deterrence and to protect the public and Maury himself from his conduct. Balancing those factors against Maury's good behavior while in custody, the District Court sentenced Maury to a term of ten months of imprisonment, a sentence within the advisory Guidelines range of seven to thirteen months and well below the statutory maximum of twenty-four months. We are confident that the District Court examined the totality of the circumstances surrounding the circumstances of Maury's violations and arrived at a reasonable sentence. We cannot hold that no reasonable sentencing court would have imposed the sentence imposed here. We will therefore affirm the ten-month sentence imposed by the District Court.

## V.

For the reasons discussed above, we will affirm the judgment of revocation.